UNITED STATES of America

v.

Rev. Alberto MEJIAS et al., Defendants.

No. 76 Cr. 164.

United States District Court,
S. D. New York.

May 24, 1976.

Stuart R. Shaw, New York City, for defendant Henry Cifuentes-Rojas.

Abraham Solomon, New York City, for defendant Jose Ramirez-Rivera.

Federal Defender Services Unit, New York City, by Jack Lipson, Brooklyn, N. Y., for defendant Manuel Francisco Padilla Martinez.

Herbert Olan Brown, Brooklyn, N. Y., for defendant Francisco Cadena.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by Michael Q. Carey, Nathaniel H. Akerman, Asst. U. S. Attys., New York City, for the United States.

John A. Ciampa, New York City, for defendant Rev. Alberto Mejias.

Stokamer & Epstein by Michael P. Stokamer, New York City, for defendant Mario Navas.

Howard Jacobs, Donald Nawi, New York City, for defendant Estella Navas.

## OPINION

ROBERT L. CARTER, District Judge.

Defendants Rev. Alberto Mejias, Mario Navas, Estella Navas, Henry Cifuentes-Rojas, Jose Ramirez-Rivera, Manuel Francisco Padilla Martinez and Francisco Cadena[1] have moved for an order, pursuant to 18 U.S.C. § 3164(b) and (c), releasing them from custody. The motion is denied. Because of the critical importance of the issues raised on this motion to the administration of the criminal justice system, and because of the apparent conflict between the opinions expressed herein and a decision of the United States Court of Appeals for the Ninth Circuit, it is my hope that the Court of Appeals of this Circuit will agree to an expedited consideration of these issues so that they can be authoritatively resolved for the circuit.

### Facts

On February 19, 1976, the moving defendants were indicted by the government and charged with conspiracy and various substantive violations of the federal drug laws. On the same day, the moving defendants were arrested by federal agents and taken into federal custody. No state detainer is presently lodged against any defendant. Each of the moving defendants has been unable to post the required bail and has been incarcerated in continuous federal custody since their arrest on February 19, 1976. On May 17, 1976, hearings on various pretrial motions were commenced. These hearings are still in progress and will continue right up until the commencement of trial.[2]

### Discussion

The Speedy Trial Act of 1974 (P.L. 93–619), 18 U.S.C. § 3161 et seq., provides in § 3164 as follows:

"§ 3164. Interim limits

(a) During an interim period commencing ninety days following July 1, 1975 and ending on the date immediately preceding the date on which the time limits provided for under section 3161(b) and section 3161(c) of this chapter become effective, each district shall place into operation an interim plan to assure priority in the trial or other disposition of cases involving—

(1) detained persons who are being held in detention solely because they are awaiting trial.

.    .    .    .    .

(b) During the period such plan is in effect, the trial of any person who falls within subsection (a)(1)  .  .  . of this section shall commence no later than ninety days following the beginning of such continuous detention  .  .  .. The trial of any person so detained  .  . on or before the first day of the interim period shall commence no later than ninety days following the first day of the interim period.

(c) Failure to commence trial of a detainee as specified in subsection (b), through no fault of the accused or his counsel  .  .  . shall result in the automatic review by the court of the conditions of release. No detainee, as defined in subsection (a), shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial."

Pursuant to the requirements of Rule 50(b), F.R.Crim.P., and in conformity with the provisions of the Speedy Trial Act of 1974, the judges of the United States District Court for the Southern District of New York adopted the "Interim Plan Pursuant To The Provisions Of The Speedy Trial Act of 1974" (hereinafter the "Interim

---

1. Defendant Alba Luz Valenzuela has been released on bail and is therefore not a party to this motion.

2. Although defendants seek further evidentiary hearings on wiretap minimization and violation of their Fifth Amendment rights by virtue of pre-indictment delay, it is likely that the trial will have commenced, when, as anticipated, this opinion is filed on May 24th.

Plan").[3] Rule 3 of the Interim Plan provides, in pertinent part, as follows:

"3. Time Requirements for Trial of Defendants in Custody and of High Risk Defendants

(a)(1) Trial of a defendant held in custody solely for the purpose of trial shall commence within 90 days following the beginning of continuous custody."

Rule 4 of the Interim Plan provides, in pertinent part:

"4. Effect of Non-Compliance

(a) Upon the expiration of the time limits prescribed by Section 3:

(1) A defendant in custody solely because he is awaiting trial and whose trial has failed to commence through no fault of the accused or his attorney shall be released subject to such conditions as the court may impose in accordance with 18 U.S.C. § 3146."

█ Thus, it is clear from the statute and the Interim Plan that the trial of detained individuals must commence within 90 days following the beginning of detention. If trial is not commenced within this period,

defendants must be released.[4] There is no dispute that the moving defendants have been in continuous federal custody in excess of 90 days.[5]

█ The government first argues that the defendants need not be released since the trial may be deemed to have commenced with the commencement of pretrial hearings on May 17, 1976 (i. e., within the 90-day period). I cannot accept this argument. It is clear that the terms of the Speedy Trial Act itself distinguish a "trial" from "pretrial" proceedings. A trial in a jury case is deemed to commence at the beginning of voir dire.[6] I therefore hold that for purposes of the 90-day trial requirement of 18 U.S.C. § 3164(b), and Rule 3 of the Interim Plan, trial of this action has not yet commenced.

The government next argues that even if this trial is not deemed to have commenced, the exclusionary periods set forth in 18 U.S.C. § 3161(h)[7] and in Rule 6 of the Interim Plan may be applied to the 90-day requirement. If the § 3161(h) exclusions do apply, the time expended on pretrial hearings would be excluded from the 90-day

3. The Interim Plan is effective from September 29, 1975, through July 1, 1976, at which time a newly revised Interim Plan will take effect.

4. Defendants' motion was made on May 20, 1976, the 91st day of confinement.

5. The only other requirement for release set out in § 3164(c) and in Rule 4(a)(1) of the Interim Plan is that the defendants' trial has failed to commence through no fault of the accused or his attorney. I have little doubt that verbose and often irrelevant argument and cross-examination by defense counsel has significantly delayed the completion of pretrial hearings and the commencement of trial in this action. Nevertheless, I cannot in good conscience hold that such behavior rises to the level of "fault" within the meaning of § 3164(c) and Rule 4 of the Interim Plan.

6. This definition or measurement of the period commencing trial was explicitly adopted in the Plan for Prompt Disposition of Criminal Cases (hereinafter "Plan for Prompt Disposition"), prepared pursuant to the requirements of the Speedy Trial Act of 1974, and approved and adopted by the judges of the United States District Court for the Southern District of New York, effective July 1, 1976. The Plan for

Prompt Disposition was formulated in consultation with, and after considering the recommendations of, the Speedy Trial Planning Group for the Southern District of New York, and is subject to approval as required by 18 U.S.C. § 3165(c). With regard to the measurement of the commencement of trial, reference should be made to Section III, 5(e)(2), at p. III–7 and Section III, 6(c)(3), at p. III–10.

7. 18 U.S.C. § 3161(h) provides, in pertinent part, as follows:

"(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of Delay resulting from other proceedings concerning the defendant, including but not limited to—

. . . . .

(E) delay resulting from hearings on pretrial motions;

. . . . .

(G) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement."

period, and the moving defendants would not be entitled to release.

■ The applicability of the § 3161(h) exclusions to § 3164 is far from explicit. Nevertheless, a careful reading of the legislative history of the Speedy Trial Act of 1974 leads to the conclusion that it was the intent of Congress to have the exclusions set out in § 3161(h) apply to the interim limits of § 3164 as well.

Section 3164 was introduced in order "that certain minimal speedy trial requirements be placed into operation . . . pending the full effectiveness of sections 3161 and 3162." Senate Committee on the Judiciary, Speedy Trial Act of 1974, Report on S. 754, S.Rep. No. 93–1021, 93rd Cong., 2d Sess., at p. 45 (1974) (hereinafter "Senate Committee Report"). Section 3164 itself states merely that its intent is "to assure priority in the trial or disposition" of certain cases by imposing shorter time limits for certain cases during the interim period of the Act. It seems highly doubtful that Congress could have intended that the "minimal speedy trial requirements" of § 3164 operate more strictly and with harsher results than will apply under § 3161(b) and (c) when the Act takes full effect.[8]

Furthermore, nothing in the statutory history indicates that § 3164 was intended to create a separate category of cases to which the excludable periods would not apply. Indeed, Congress provided for exclusions "in recognition of the impossibility of providing rigid time limits for the trial of criminal cases." House Committee on the Judiciary, Speedy Trial Act of 1974, Report on H.R. 17409, H.Rep. No. 93–1508, 93rd Cong., 2nd Sess., at p. 21 (1974), U.S.Code

Cong. & Admin.News 1974, p. 7401 (hereinafter "House Committee Report"). Exclusions were provided to insure "that the rights of the individual to a complete and full hearing are not trampled in the headlong rush for the disposition of a trial." Id. at p. 15. The House Committee Report concluded that:

"The Committee believes that both delay and haste in the processing of criminal cases must be avoided; neither of these tactics inures to the benefit of the defendant, the Government, the courts nor society. The word speedy does not, in the Committee's view denote assembly-line justice, but efficiency in the processing of cases which is commensurate with due process." Id.

Further support for the proposition that the excludable periods of § 3161 apply to § 3164 is to be found in the origins of that section. The Senate Committee Report indicates that the interim plans would be similar to the plan which had been adopted by the United States Court of Appeals for the Second Circuit. See Senate Committee Report, at p. 45. In this regard, the Senate Report noted that:

"[The Second Circuit] rules require the Government to be ready for trial . . . within 90 days if he is detained. The rules also allow a number of traditional exclusions (i. e., for certain pretrial proceedings), suggested by the American Bar Association Standards and contained in many modern speedy trial statutes." Id. at p. 17.

Thus, Congress intended that the interim plans be similar to the one adopted by the Second Circuit—i.e., incorporating the "traditional exclusions." [9] Since § 3164 is to be

---

8. When § 3161(b) and (c) go into effect on July 1, 1979 (and § 3164 thereby ceases to operate), there will be a 100-day time limit *excluding periods of excusable delay* in which all defendants must be brought to trial. It is anomalous at best that the exclusionary periods of § 3161(h) should not apply to § 3164 during the interim period merely because Congress failed to recognize explicitly the applicability of excludible periods to § 3164.

9. Prior to the adoption of the Interim Plan on September 29, 1975, Rule 3 of the Plan for Achieving Prompt Disposition of Criminal Cases provided in pertinent part, as follows:

"3. Detained Defendants: Trial Readiness and Effect of Non-Compliance.

In cases where a defendant is detained, the government must be ready for trial within ninety days from the date of detention. If the government is not ready for trial within such time, and if the defendant is charged only with noncapital offenses, the defendant

read in harmony with that Second Circuit plan, it must incorporate as well the traditional exclusions as enumerated in § 3161.

■ I am of the view that a careful reading of the Speedy Trial Act of 1974, and the relevant legislative history, compel the conclusion I have reached. This Act, like any other statute, must be read in such a way as to render it a sensible and workable whole. As Mr. Justice Frankfurter observed in *United States v. Shirey,* 359 U.S. 255, 260–61, 79 S.Ct. 746, 749, 3 L.Ed.2d 789 (1959):

> "Statutes, including penal enactments, are not inert exercises in literary composition. They are instruments of government, and in construing them 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down.' *United States v. Whitridge,* 197 U.S. 135, 143, 25 S.Ct. 406, 408, 49 L.Ed. 696. This is so because the purpose of an enactment is embedded in its words even though it is not always pedantically expressed in words. See *United States v. Wurzbach,* 280 U.S. 396, 399, 50 S.Ct. 167, 168, 74 L.Ed. 508. Statutory meaning, it is to be remembered, is more to be felt than demonstrated, see *United States v. Johnson,* 221 U.S. 488, 496, 31 S.Ct. 627, 55 L.Ed. 823, or, as Judge Learned Hand has put it, the art of interpretation is 'the art of proliferating a purpose.' *Brooklyn Nat. Corp. v. Commissioner of Internal Revenue,* 2 Cir., 157 F.2d 450, 451. In ascertaining this purpose it is important to remember that no matter how elastic is the use to which the term scientific may be put, it cannot be used to describe the legislative process. That is a crude but practical process of the adaptation by the ordinary citizen of means to an end, ex-

cept when it concerns technical problems beyond the ken of the average man."

Similarly, Mr. Justice Reed has stated:

> "There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words." *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940) (footnotes omitted).

I must point out that my analysis leads to a conclusion which is contrary to that reached in two recent opinions. Research has uncovered only two cases which have dealt with the applicability of the § 3161 exclusions to § 3164. In *United States v. Steven Soliah,* Crim. No. 75–523 (E.D.Cal., January 14, 1976),[10] Judge Wilkins ruled that the § 3161(h) exclusions do not "apply to a defendant who is incarcerated solely for the purpose of awaiting trial." The ruling was based first on the rationale that *Sara Jane Moore v. U. S. District Court,* 525 F.2d 328 (9th Cir., 1975) had by implication rejected the contention that excludable delay applies to § 3164. Second, Judge Wilkins rejected the argument based on an analysis of the legislative history of the Speedy Trial Act which relies on the former Second Circuit plan since the Second Circuit

shall be released upon bond or his own recognizance or upon such other conditions as the district court may determine, unless there is a showing of exceptional circumstances justifying the continued detention of the defendant, and then the detention shall continue only for so long as is necessary."

Rule 5 of that Plan sets out various excluded periods (including an exclusion for pretrial motions); by the terms of the Plan these excluded periods applied to the 90-day trial requirement of Rule 3.

**10.** The opinion is reported in Issuance # 10 of the Administrative Office of the United States Courts, February 11, 1976.

plan "contained an explicit provision incorporating exclusions to the situation where the défendant is incarcerated solely for the purpose of awaiting trial." Finally, Judge Wilkins felt compelled to follow General Order # 63 of his District, which requires release of an incarcerated defendant whose trial has not commenced within 90 days. Even if the Speedy Trial Act, standing alone, would require periods of time to be excluded from the computation of the 90-day time limit, Judge Wilkins was of the view that a District Court plan could be more restrictive than the Speedy Trial Act itself in making sure that the trials of incarcerated defendants proceed within the 90-day period.[11]

More recently, in *United States v. Tirasso,* 532 F.2d 1298 (9th Cir., 1976)[12] the Court held that § 3164 "does not provide any periods of exclusion for delay occasioned by the special circumstances of difficult cases." In footnote 1 of its opinion, the Court opined as follows:

"We note, by way of contrast, that the statute provides an elaborate series of exceptions or exclusions applicable to the permanent and transitional periods. 18 U.S.C. § 3161(h). The fact that such exceptions or exclusions were explicitly provided in one portion of the statute but not in the other may have been the product of a drafting error, or perhaps was caused by a misunderstanding of the practical requirements of criminal administration. In any event, the contrast in the statute requires us to find that the clearly expressed congressional intent is to provide no periods of exclusion for the ninety-day trial requirement applicable during the interim period."

As I have indicated, I do not believe that these cases properly reflect the intent of Congress in drafting the Speedy Trial Act of 1974.

I recognize that Rule 6 of the Interim Plan which sets out the various excluded periods, by its terms refers only to computations made under Rule 5—the six-month rule. By negative implication it might appear, as defendants contend, that the Interim Plan expressly bars the exclusion of any of the Rule 6 excluded periods in computing the time requirements for trial of defendants in custody pursuant to Rule 3 of the Interim Plan. Indeed, this reading of the Interim Plan is confirmed in the Plan for Prompt Disposition, Section III, at p. III–12.[13] It is clear that with regard to computing any time limit under Section 6 (which relates to the 90-day rule regarding defendants in custody) there was a clear intention *not* to exclude any of the time periods set forth in § 3161(h). Lest there be any doubt in this regard, I have communicated with Professor Michael Martin of Fordham Law School who served as Reporter for the Plan for Prompt Disposition; Professor Martin has confirmed my reading of the Plan for Prompt Disposition.

However, the proposed Plan for Prompt Disposition is not yet operative. While it must be conceded in light of the above recited legislative history that the planning group responsible for the formulation of the Plan for Prompt Disposition intended not to exclude time devoted to pretrial hearings, I am not convinced that the Board of Judges in adopting the Plan was fully aware of its implications. The question was not raised or. discussed by the Board of Judges. In any event the current provisions of the Interim Plan, like the statute itself, do not compel the conclusion that time spent on pretrial hearings is not to be excluded.

---

**11.** I agree with Judge Wilkins that an interim plan may be more restrictive than the statute. However, to the extent that such a plan may be inconsistent with the language and intent of the statute, it cannot be binding.

**12.** The opinion is reported in Issuance # 12 of the Administrative Office of the United States Courts, March 30, 1976.

**13.** "10. Exclusion of Time From Computations

(a) *Applicability.* In computing any time limit under sections 3, 4, 5 or 7, the periods of delay set forth in 18 U.S.C. § 3161(h) shall be excluded."

As indicated in note 6, *supra,* the Plan for Prompt Disposition, if approved, will not become effective until July 1, 1976.

Therefore, I give the current Interim Plan a reading consistent with my understanding of the statute.

The government has represented that various of the moving defendants are illegal aliens and that several have entered this country with forged passports. Furthermore, the government indicates that it is impossible to establish the true identity of the defendants with any certainty. Based on these facts, and its experience with respect to other individuals with whom the defendants are alleged to have associated, the government strongly believes that release of the defendants will in practical effect mean their imminent absence from this jurisdiction.[14]

It is clear that the issues raised on this motion are of vital significance to the continued effective administration of criminal justice in this District and Circuit, and a definitive resolution is urgently needed. In this age of multi-defendant, multi-count indictments, often charging conspiracies of long duration and international scope, it is evident that this issue is likely to recur with ever-increasing regularity.

14. The moving defendants were arrested, some on September 3, and others on October 4, 1974, by state authorities. Defendants were held in state custody from the date of arrest until their indictment on February 19, 1976 by federal authorities. Mejias, Padilla, Salazar-Cadena, and Valenzuela, who, as has been indicated, is not involved in this motion, prevailed in the state courts on a motion to suppress evidence seized at the time of arrest from their person and upon a search of Mejias' apartment. They seek similar relief here. The evidentiary hearing on their motion to suppress consumed nearly a full week. Yet, such a hearing took over three weeks in the state court.

Moreover, defendants assert other violations of their right to a speedy trial. They contend that a 1974 state-federal decision for the state to prosecute them which was followed (after the state had lost the motion to suppress) by a subsequent state-federal decision for the federal government to proceed against them constitutes forum shopping. Cf. United States v. Lara, 520 F.2d 460 (D.C.Cir.1975). Defendants would have us count their state arrest and time in custody against the government for speedy trial purposes. While I consider their theory to

Defendants' motion for release pursuant to 18 U.S.C. § 3164(b) and (c) is hereby denied.

SO ORDERED.

be conceptually flawed, absent a clear and particularized showing of federal-state contrivance, because the parallel existence of the state and federal governments as separate sovereign entities is disregarded, the defendants seem to have authoritative support for their contentions. See Gravitt v. United States, 523 F.2d 1211 (5th Cir. 1975).

Thus, defendants have delayed commencement of the trial by raising complex and novel issues requiring serious consideration. If pretrial hearings are not excluded from the 90-day limitation, courts in similar situations will be pressured either to give short shrift to a detainee's pretrial claims or to grant him his freedom in full recognition and expectation that once free he will flee. Obviously, these considerations are irrelevant if Congress intended that pretrial hearings not be excluded from the 90-day computation. I would suggest, however, that it is these considerations (the protection of a defendant's right to an evidentiary determination of his pretrial claims and the obligation of the court to give such contentions the careful attention and time justice requires) which make it inconceivable, at least to me, that Congress purposed the result the defendants urge.