**UNITED STATES of America, Plaintiff,**

v.

**Jerome Lawrence MASKO and William Gary Cutting, Defendants.**

**No. 76–CR–15.**

United States District Court, W. D. Wisconsin.

June 25, 1976.

Warren W. Wood, First Asst. U. S. Atty., Madison, Wis., for plaintiff.

William M. Coffey, Milwaukee, Wis., for William Gary Cutting.

Charles W. Giesen, Madison, Wis., for Jerome Lawrence Masko.

## OPINION AND ORDER

DOYLE, District Judge.

### Facts

An indictment was returned against the above-named defendants in this case on February 20, 1976, charging them with the substantive offense of armed bank robbery under 18 U.S.C. § 2113(a), involving a robbery of the Poplar Branch of the National Bank of Commerce of Superior, Wisconsin, on or about January 29, 1976. On May 27, 1976, an indictment was returned against the above-named defendants in this case; it charges them in one count with conspiring to engage in five armed bank robberies, including the robbery of the Poplar Branch of the National Bank of Commerce on or about January 29, 1976; it charges them in each of four additional counts with the substantive offense of armed robbery of each of four banks on certain dates; and it also charges them in a sixth count with aiding and abetting the substantive offense of the armed robbery of the Poplar Branch of the National Bank of Commerce on or about January 29, 1976.

Prior to the return of the first indictment on February 20, 1976, warrants for the arrest of each of the above-named defendants had been issued by a United States Magistrate on February 6, 1976 on the basis of a complaint that they had engaged in the armed robbery of the Poplar Branch of the National Bank of Commerce on or about January 29, 1976.

On February 11, 1976, defendant Cutting was arrested on the said Magistrate's warrant. Defendant Cutting remained confined until February 24, 1976 when he made bail and he has been free on bail continuously since that time. On February 20, 1976, defendant Cutting entered a plea of not guilty to the single-count indictment which had been returned against him and defendant Masko on that day, and on the same day a pretrial order was entered embodying a schedule for pretrial motions and setting trial for the week of April 5, 1976 or as soon thereafter as the court calendar would permit. On April 13, 1976, the court ordered and notice was given by the clerk that the trial of defendant Cutting on the single-count indictment returned February 20, 1976 would commence at Superior, Wisconsin with the selection of a jury on June 7, 1976. On April 22, 1976 a substitution of counsel for defendant Cutting was filed. Thereafter, defendant Cutting moved for a change of the place of trial, and on May 7, 1976 the court ordered that his trial would be held at Madison, Wisconsin, commencing June 14, 1976. On June 1, 1976, the United States Attorney called to the court's attention that the sixth count of the May 27, 1976 indictment was considered by the United States Attorney to supersede the single-count indictment which had been returned February 20, 1976, and he requested a delay in the trial of defendant Cutting, then set for June 14, 1976, stating that the subject matter of the May 27, 1976 indictment was "significantly more complex" than that of the February 20, 1976 indictment and that:

"Investigation leading to the return of the May indictment has been laborious, exhaustive, and naturally time-consuming, which accounts for the delay between the two indictments."

With respect to defendant Masko, the arrest warrant issued by the Magistrate on

February 6, 1976 was returned by the Marshal on February 23, 1976 as unexecuted because it had been superseded by a warrant on the February 20, 1976 indictment. Such a warrant for defendant Masko's arrest on the February 20, 1976 indictment had been issued by the clerk on February 23, 1976. Defendant Masko was not apprehended at any time in this case until he surrendered himself to the Federal Bureau of Investigation on April 27, 1976 at Milwaukee, Wisconsin. He has remained in custody continuously since that date because of his inability to make bail as set by the court. On June 2, 1976, and again on June 4, 1976 the court denied defendant Masko's motions for a reduction of bail, for reasons stated and recorded on those dates. There is no reasonable possibility that defendant Masko will be able to make bail, as presently set, in the foreseeable future. Unless there is a significant change in defendant Masko's circumstances not foreseen at the time of the June 4 hearing, I do not intend to modify the terms of the bail order. The ninetieth day following the beginning of his detention is July 26, 1976. On April 29, 1976, defendant Masko entered a plea of not guilty to the single-count indictment returned on February 20, 1976, and on the same day a pretrial order was entered embodying a schedule for pretrial motions and setting trial for the week of June 21, 1976 or as soon thereafter as the court calendar would permit.

On June 2, 1976, the defendant Cutting and the defendant Masko each entered a plea of not guilty to each of the six counts of the indictment returned against them on May 27, 1976. At that hearing the court cancelled the June 14, 1976 trial of defendant Cutting on the single-count February 20, 1976 indictment, and entered pretrial orders embodying a schedule for pretrial motions by both defendants in response to the May 27, 1976 indictment (under which each defendant is granted 30 days from June 2, 1976, within which to file most pretrial motions) and setting trial on the May 27, 1976 indictment for the week of July 26, 1976.

On June 11, 1976 defendant Cutting filed a motion for a change in the date of trial from the week of July 26, 1976, to any date following August 16, 1976. The basis for the motion is a conflict for defendant's counsel with a trial scheduled for the week of July 26, 1976 in the United States District Court for the Eastern District of Wisconsin. This motion has not yet been acted upon.

On June 4, 1976, on my own motion, the parties were directed to show cause:

". . . why this Court should not hold for the purposes of this case that any period of delay defined in 18 U.S.C. § 3161(h) shall be excluded when computing any time interval which might be applicable to defendant Jerome Lawrence Masko under 18 U.S.C. § 3164; and whether the Court should on its own motion delay the trial of this case by granting a continuance under 18 U.S.C. § 3161(h)(8)."

In the course of hearing on April 29, 1976, and June 4, 1976, with respect to defendant Masko's bail order, it has been represented to the court by the United States Attorney, and not disputed in those hearings by defendant Masko or by his attorney, that defendant Masko has given law enforcement officers statements concerning his participation in certain bank robberies during the period covered by the indictment returned on May 27, 1976. As of the date of entry of this opinion and order, neither party has moved for severance for trial.

On July 24, 1975, I submitted to the chief judge of the circuit proposed amendments to the then operative plan for this district under Rule 50(b) of the Federal Rules of Criminal Procedure. These proposed amendments were intended principally to bring the district's Rule 50(b) plan into compliance with the requirements of the Speedy Trial Act (18 U.S.C. § 3161 et seq., esp. § 3164) as to persons being held in detention solely because they are awaiting trial (and also as to released "high risk" persons). On October 22, 1975, I was notified by the chief judge of the circuit that the proposed amendments, with certain

changes not presently relevant, had been approved. The said amended Rule 50(b) plan was made effective November 17, 1975, and it has remained in effect and will remain in effect continuously, so far as presently relevant, through June 30, 1976, and beyond.[1] With respect to computing the time by which trial must commence in the case of a person being held in detention solely because he or she is awaiting trial, the said amended Rule 50(b) plan provides for the exclusion of those periods of delay defined in § 3161(h).

On April 30, 1976, I submitted to the chief judge of the circuit a proposed "plan for prompt disposition of criminal cases" for this district under the Speedy Trial Act for the period commencing July 1, 1976, and ending June 30, 1979. With reservations not presently relevant, the chief judge of the circuit has notified me that said plan has been approved and it will become effective July 1, 1976. With respect to computing the time by which trial must commence in the case of a person being held in detention solely because he or she is awaiting trial, the said 1976–1979 plan provides for the exclusion of those periods of delay defined in § 3161(h).

### Opinion

The central question addressed in this opinion concerns a certain section, namely, 18 U.S.C. § 3164, of the Speedy Trial Act of 1974 (18 U.S.C. §§ 3161 through 3174). Putting aside § 3164 for a moment, that Act establishes certain time periods within which informations or indictments must be filed, and arraignments and trials must be held, in criminal cases in federal courts. These time periods apply to persons who are arrested or served with summonses on and after July 1, 1976, and to offenses charged in informations and indictments filed on and after July 1, 1976. § 3163. During a transitional phase ending June 30, 1979, progressively short sets of time periods are imposed, culminating in the most severe set of time periods which are to become effective July 1, 1979, and to remain effective thereafter. § 3161(f) and (g).[2] Provision is made that during the transitional phase and also following July 1, 1979, certain periods of delay may be excluded in computing the deadlines. § 3161(h). "Sanctions" in the form of dismissals of complaints, informations, and indictments, with or without prejudice, are provided. § 3162.

Into this statutory scheme, Congress has inserted § 3164, entitled "interim limits." The "interim" defined in § 3164 commenced September 29, 1975, and continues through June 30, 1979. Section 3164 relates exclusively to the category of cases which involve "detained persons who are being held in detention solely because they are awaiting trial" and to another category of cases not presently relevant.[3] The trial of any person so detained: ". . . shall commence no later than ninety days following the beginning of such continuous detention. . . . ." § 3164(b). "Failure to commence trial of a detainee [within said ninety day period], through no fault of the accused or his counsel, . . . shall result in the automatic review by the court of

---

**1.** It is not necessary now to decide whether, after July 1, 1976, the Rule 50(b) plan or the Speedy Trial Act Plan referred to in the following paragraph of this opinion will govern the time intervals operative in the present case. So far as relevant here, they contain identical provisions.

**2.** These transitional sets of time periods are: from date of arrest or of service of summons to date of filing an information or indictment, 60 days during the first year, 45 days during the second year, and 35 days during the third year; from date of filing an information or indictment to date of arraignment, 10 days during each of the three years; from date of arraignment to

date of commencement of trial, 180 days during the first year, 120 days during the second year, and 80 days during the third year. The "permanent" time periods effective as of July 1, 1979, are: from date of arrest or of service of summons to date of filing an information or indictment, 30 days; from date of filing an information or indictment to date of arraignment, 10 days; from date of arraignment to date of commencement of trial, 60 days. § 3161(b), (c), (f), and (g).

**3.** This latter category includes cases involving "released persons who are awaiting trial and have been designated by the attorney for the Government as being of high risk."

the conditions of release. No [such detained person] shall be held in custody pending trial after the expiration of such ninety-day period required for the commencement of his trial." § 3164(c). Section 3164 contains no reference to the exclusion of any period of time in computing the ninety day period.

In response to this court's invitation, counsel has stated defendant Masko's position to be that in the computation of the ninety-day deadline for trial embodied in § 3164, none of the periods of time defined in § 3161(h) may be excluded, and that after July 26, 1976, he cannot be held in custody pending trial. Defendant's position is supported by the decision in *United States v. Tirasso*, 532 F.2d 1298 (9th Cir., 1976), reported in part at 44 U.S.L. Week 2478.

In *Tirasso* the court found the language of § 3164 unambiguous. It also concluded that strict application of this unambiguous language was required by the following language in the Senate report on the bill which became the Speedy Trial Act: "Failure to commence the trial of a detained person under [§ 3164] results in the automatic review of the terms of release by the court and, in the case of a person already under detention, release from custody." S.Rep. No.1021, 93d Cong., 2d Sess., 4 U.S.Code Cong. & Ad.News pp. 7401, 7416 (1974).

I do not agree that this language from the Senate report sheds light on whether any periods of time may be excluded in computing the deadline imposed by § 3164. The passage from the report is simply a paraphrase of the section of the bill which is now § 3164.

I do agree that viewed without reference to any other portion of the Speedy Trial Act, the language of § 3164 is unambiguous, and that it would appear to require absolutely the release of an untried defendant on the ninety-first day following the beginning of his or her continuous pretrial detention.

In the *Tirasso* opinion and in the discussion within the federal judicial system, that is, within the Federal Judicial Center and within the Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, much of the difficulty in construing § 3164, it appears, stems from certain incongruities which are thought to mark its very presence in the Act and to mark its language as compared with the language of the remaining sections of the Act.

I start with this proposition: that § 3164 must be viewed as an integral part of the grand scheme of the Act, and more particularly as an integral part of the transitional phase of the Act. This proposition is less bland than it may seem. It is possible to view § 3164 as if it were virtually an independent enactment, appearing rather fortuitously in this comprehensive Speedy Trial Act. That is to say, it is possible to *suppose that quite independently of the* more expansive objectives of the Speedy Trial Act—prompt judicial response to antisocial behavior, overcoming defensive delaying tactics, promotion of truth by use of fresh recollection, and so on—Congress chose to deal with the particular perceived evil of excessively prolonged pretrial detentions by imposing a flat 90 day limit on them with no extensions permitted. I re*ject this possible view for two reasons.* The first is that § 3164 undeniably appears within the Act and sound rules of statutory construction require it to be viewed as playing its part in the grand scheme of the Act. The second is that by its terms, the operative effect of § 3164 expires on July 1, 1979, when the permanent statutory pattern takes effect. Congress cannot be supposed to have intended to respond to the particular evil of excessively prolonged pretrial detentions by prescribing a remedy to be effective from September 29, 1975, through June 30, 1979, but no remedy to be effective during the indefinite period commencing July 1, 1979.

This is clearly not what Congress intended to do or what it did. Within the permanent pattern of the Act, to become effective July 1, 1979, no distinction is made between these two classes of cases: (1) those cases in which defendants are being held in deten-

tion solely because they are awaiting trial and those in which defendants have been released but have been designated by the attorney for the United States as being of high risk; and (2) those cases in which defendants are neither being so held nor have been so designated. Moreover, the permanent sanctions provided in § 3162 do not include a requirement that after certain periods of time persons being held in detention solely because they are awaiting trial must be released from detention. The reason for the absence of such a distinction and such a sanction from the permanent pattern of the Act is that they would serve no purpose. When the permanent pattern of the Act becomes effective, no more than 100 days (plus excludable time as defined in § 3161(h)) may elapse between the day of arrest or service of summons and the day of commencement of trial. On the 101st day, the action is to be dismissed on motion of the defendant, with or without prejudice. For defendants who have been detained solely because they are awaiting trial, for defendants who have been released but have been designated by the attorney for the United States as being of high risk, and for defendants who have been neither so detained or so designated, dismissal of the action ends all restrictions. No special provision in the Act for release from detention, no special treatment of detained persons or persons of high risk, is called for.

It is the transitional period prior to July 1, 1979, and only the transitional period, which gave rise to Congressional concerns reflected in § 3164. One alternative was to make no special transitional provision for persons detained to await trial or for persons of high risk; that is, not to alter in these respects the state of affairs as it existed prior to passage of the Act. Had no such special transitional provision been made, and had the courts observed the transitional time limits provided in the Act, trials would have commenced, successively in the three transitional years, not later than 250 days, or 175 days, or 125 days (plus excludable time as defined in § 3161(h)) after the date of arrest or service of summons, and upon the termination of the trial,

pretrial detention would end and high risk uncertainties would become amenable to some resolution. The do-nothing transitional course with respect to prolonged pretrial detention and to release of persons of high risk, however, presented difficulties. One was that for various reasons it seemed wise to withhold the sanction of dismissal of prosecutions during the transition. Although the courts might be expected to strive to honor the transitional deadlines, failures to do so might extend the intervals of pretrial detention of some persons and of freedom of persons of high risk well beyond 250 days, or 175 days, or 125 days (plus excludable time as defined in § 3161(h)). Another difficulty was that various reasons dictated that the transitional deadlines be rather ample so that even if they were to be observed faithfully and universally, three years would pass before the particular problems of prolonged pretrial detention and freedom of persons of high risk would be dealt with as Congress believed they should be.

The result of these considerations was § 3164. Assuming for a moment that no provision whatever for excludable time had been included in the Act, the effect of § 3164 was to insure that continuous pretrial detention would end some 160 days, 85 days, and 35 days earlier than the deadlines for trial insured by other provisions of the Act successively for the three transitional years, assuming that these deadlines were observed despite the absence of sanctions.

All of this emphasizes, of course, the relative sense of urgency with which Congress addressed itself to the particular problems of prolonged pretrial detention and unreviewed freedom of persons of high risk, as contrasted with many other problems to which the Act was addressed. But none of this affords any basis whatever for the notion that Congress was insistent that these two problems be dealt with by the courts with greater urgency during the interval from September 29, 1975, through June 30, 1979, than during the indefinite period thereafter.

I am bound to choose a reasonable statutory construction rather than an unreasonable construction when the choice is open to me, as it is here. It is unreasonable to conclude that Congress intended that during the period in which its permanent legislative program will be operative, the time for automatic review of the pretrial freedom of persons of high risk and the time for imposition of the sanction of compelled release from pretrial detention will be subject to computation in which the periods of delay defined in § 3161(h) may be excluded, but that during the transitional period the § 3161(h) excludable periods are of no effect.

I hold that § 3164 is to be construed to embody by implication the provisions of § 3161(h).

In the order to show cause entered herein June 4, 1976, I invited the parties to respond to two questions, one of which I have now answered. The second question was whether on its own motion, the court should delay the trial of this case by granting a continuance under § 3161(h)(8). I will reserve a ruling on this second question. However, I now inform counsel for both defendants that the trial presently scheduled for the week of July 26, 1976, whether the trial is eventually severed or not, is postponed to a day to be determined.