UNITED STATES of America

v.

James E. HOWARD et al.

No. Y–77–0387.

United States District Court,
D. Maryland.

Nov. 7, 1977.

Robert P. Trout and Gale Rasin, Asst. U. S. Attys., Baltimore, Md., for plaintiff.

Leslie L. Gladstone, Baltimore, Md., for James E. Howard.

Aaron Kadish, Baltimore, Md., for Berry Lee Palmer.

Luther C. West, Baltimore, Md., for Carla Palmer.

John A. Hayes, Jr., Baltimore, Md., for Theodore Hartzog.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Defendants James E. Howard and Theodore Hartzog have moved to dismiss the indictment, or in the alternative for release from custody pending trial. The basis for their motions is that the date of their trial, now scheduled for November 14, 1977, is not within the time limits of the Federal Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, or the local court rules for the District of Maryland. The defendants are among eight co-defendants charged with conspiring to distribute, and possession with intent to distribute heroin in violation of 21 U.S.C. § 846. Howard is also alleged in Count II of the indictment to have conducted a continuing criminal enterprise in violation of 21 U.S.C. § 848.

Howard and Hartzog, along with their co-defendants, were arrested on August 11, 1977. Hartzog was arraigned on August

19, 1977, but Howard, because of a hospitalization and at the request of his counsel, was not arraigned until August 26, 1977. Hartzog's bail was initially set at $30,000. On September 9, 1977, the Magistrate conducted a Bail Review Hearing and denied the reduction sought by Hartzog. Hartzog remains in custody in the Baltimore City Jail.

Bail for Howard, allegedly the principal conspirator, was set at $400,000. The Magistrate, on August 26, 1977, refused to reduce bail, noting in his memorandum and order that Howard "poses a substantial risk of flight . . .". Subsequently, on September 2, 1977, this Court refused to modify the Magistrate's ruling, similarly finding that bail of $400,000 was not excessive in view of the guidelines to be considered. Accordingly, Howard also remains in custody.

The Congress through the Speedy Trial Act, 18 U.S.C. 3161, et seq., has seen fit to impose on the federal district courts time limits within which criminal defendants must be processed and tried. Under § 3161 a defendant must be indicted within 30 days of the arrest, arraigned within 10 days of the indictment, and brought to trial within 60 days of the arraignment. Section 3163, however, provides for a gradual phase-in for these standards which do not become effective until July, 1979. For the period from July 1, 1977 until June 30, 1978 a defendant must be indicted within 45 days of his arrest, arraigned within 10 days of the indictment, and brought to trial within 120 days of the arraignment. If the defendant is not tried within the applicable time limit, the court must dismiss the indictment. 18 U.S.C. § 3162(a)(2). During the transition period a set of "interim limits" controls. 18 U.S.C. § 3164. These require, inter alia, a defendant in custody to be tried within 90 days of his arrest. A failure to comply with this directive requires the defendant's release pending trial. 18 U.S.C. § 3164(c). Under § 3161(h) certain periods are excludable from the computation of time. Sections 3165 and 3166 instruct the district courts to effect plans in accordance with the dictates of the Act.

Defendants Howard and Hartzog have moved for a dismissal of their indictment under § 3161 and, in the alternative, for their release pending trial pursuant to § 3164. The motion for dismissal under the Act can be summarily disposed of. The presently effective phase-in provisions of § 3163 require only that a trial commence within 120 days of the arraignment. The trial in this case will start long before this period runs.

Nor does § 3164 dictate that the defendants be released pending trial. Under § 3161(h)(4) "[a]ny period[s] of delay resulting from the fact that the defendant is . . . physically unable to stand trial," should be excluded from the time within which the trial of any such defendant must commence. In United States v. Tirasso, 532 F.2d 1298 (9th Cir. 1976), the Ninth Circuit held that the excludable time periods of § 3161(h) do not apply to the 90-day provision for defendants in custody under § 3164. However, several courts have disagreed. See United States v. Corley, 179 U.S.App.D.C. 88, 548 F.2d 1043 (1976); United States v. Masko, 415 F.Supp. 1317 (W.D.Wisc.1976); United States v. Mejias, 417 F.Supp. 579 (S.D.N.Y.), aff'd on other grounds sub nom. United States v. Martinez, 538 F.2d 921 (2d Cir. 1976). The better view, and the one adopted here, is that the excludable periods of § 3161(h) modify the limits of § 3164. See, R. S. Frase, "The Speedy Trial Act of 1974," 43 U.Chic.L.Rev. 667, 712–715 (1976).

After his arrest the defendant Howard spent 10 days (August 12–22) in the hospital, unavailable for trial. Since this time is excluded in computing the 90-day deadline, the trial which is to commence on November 14 is timely.

Even if the provisions of § 3161(h) do not apply to the § 3164 interim timetable, § 3164(c) mandates a release only if the failure to commence trial is "through no fault of the accused or his counsel." If the delay is occasioned by the accused's counsel, the defendant's release is not compelled.

*United States v. Martinez*, 538 F.2d 921 (2d Cir. 1976).

In this case the trial could not begin within 90 days in part because several of the defendants' lawyers were not available. After this case was transferred to this Court on September 1, defendant Howard's attorney requested by letter that the trial not begin before November 10. The unavailability of counsel for a co-defendant made even more impracticable a trial in late October. Accordingly, at the September 23 scheduling conference the Court faced the following alternatives: (1) replace these two counsel with others only one month before trial, or (2) schedule the trial for the earliest available date—November 14. Desiring to insure the defendants effective representation, the Court chose the latter alternative.

■ "Fault" in the context of § 3164(c) has no perjorative connotation. The term refers to a causal nexus between the delay in commencing trial and the actions of the defendants and their counsel. Accordingly, since the delay of less than one week beyond the existing guidelines was permitted to accommodate counsel for Howard and a co-defendant together with a concern for the defendants' rights to effective representation, the failure to commence the trial within 90 days of their arrests was not without the "fault" of the accused and his counsel.

■ Neither Hartzog nor his counsel played any role in the delay of the trial date. Nor was Hartzog unavailable for trial. Nevertheless, the Act should not be read to require that the Court treat Hartzog differently. An exclusion provision under § 3161(h) enables the Court to toll the running of a time period by granting a continuance on its own motion if the "ends of justice served by taking such action outweigh the best interests of the public and the defendant in a speedy trial." *See*, R. S. Frase, 43 Chic.L.Rev. at 698–704.

A major aim of the Speedy Trial Act is to bring about an increase in the efficiency of the courts. *See*, H. R. Rep. 1508 (Judiciary Committee), 93rd Cong., 2d Sess. (1974); U. S. Code Cong. & Admin. News 1974, p. 7401.

■ A failure to toll the Act as to the defendant Hartzog would require the Court to sever his trial from that of the other defendants in order to avoid releasing him without adequate assurance that he would appear at trial. Such a severance would unduly hamper the presentation of evidence and would unnecessarily double the trial time of this prosecution. For reasons such as these, a joint trial is especially appropriate in a conspiracy case. *United States v. Edwards*, 488 F.2d 1154 (5th Cir. 1974). Clearly, the benefits derived from an earlier trial of Hartzog do not outweigh the colossal inefficiency of a double prosecution. Nor would his release pending trial on November 14 be appropriate, as was determined when bail was set and again when the Magistrate reviewed the conditions of his release on September 12. Accordingly, the "ends of justice" dictate that a continuance be granted in the case of Hartzog, thus extending the 90-day limit of § 3164 to and including November 14.

■ Regardless of the proper construction of the Speedy Trial Act, its commands cannot be given effect because they are an unconstitutional legislative encroachment on the judiciary. The constitutional principle of the separation of powers is implicit in the basic structure of the Constitution. The doctrine has been recognized from the earliest days of our constitutional history. Five of the Federalist Papers, No. 47–51, are devoted to an exploration of this doctrine. In one, Federalist No. 48, Madison wrote:

It is agreed on all sides that the powers properly belonging to one of the departments, ought not to be directly and completely administered by either of the other departments. It is equally evident, that neither of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers.

The separation was not intended, nor has it proven to be, complete. A system of checks and balances prevents one branch from pre-

dominating. *See* Federalist Paper No. 51. The checks, however, have never included an interference with the internal functions of one branch by another.

Courts have occasionally acquiesced in legislative action over procedural rule-making. But there must be a line beyond which legislative action directed to the administration of judicial procedures becomes legislative control, and, as such, an unwarranted intrusion into the judicial system. Commentators Levin and Amsterdam identify this judicial sanctuary as follows:

> There are spheres of activity so fundamental and so necessary to a court, so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase *judicial power* (emphasis in original).

"Legislative Control Over Judicial Rule Making: A problem in Constitutional Revision," 107 U.Pa.L.Rev. 1, 30 (1958). These writers expand their description of these exclusively judicial concerns by suggesting that

> there is a third realm of judicial activity, neither substantive nor adjective law, a realm of proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power. This is the area of minimum functional integrity of the courts, what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court. Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid. (Footnotes omitted.)

107 U.Pa.L.Rev. at 31–32. One "hampering condition" imposed on the judiciary by a legislation which "clearly offends the constitutional scheme of the separation of powers" is a time limit within which the judiciary must act on matters *sub curia.* 107 U.Pa.L.Rev. at n. 148, n. 155.

While Levin and Amsterdam directed their attention primarily to state legislatures and state courts, their discussion generally concerns an application of the doctrine of the separation of powers which is also consistent with the federal constitutional structure. Assuming *arguendo* that the Congress has the power to abolish the lower federal courts entirely (*see* H. Hart, "The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic," 66 Harv.L.Rev. 1362 (1953)), having established such courts, the Congress cannot unduly interfere with purely judicial functions. *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871); *see also,* Note, "Separation of Powers and the Federal Rules of Evidence," 26 Hastings L.Rev. 1059, 1065–1066 (1975). In short, the fact that Congress can create the lower federal courts does not alter the conclusion that it cannot validly establish a timetable for judicial action. H. Rottschaefer, Handbook of American Constitutional Law, 55–56 (1939). As the late Mr. Justice Cardozo explained, " . . . the power to stay proceedings is incidental to *the power inherent in every court* to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (Emphasis added.) *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936).

Under these principles, courts have consistently declared void legislation which insisted on judicial action within a set period of time.

> No one will deny that the legislative arm of the government has the power to alter and regulate the procedure in both law and equity matters, but for it to attempt to compel the courts to give a hearing to a particular litigant at a particular time, to the absolute exclusion of others who may have an equal claim upon its attention, strikes a blow at the very foundation of constitutional government. The right to control its order of business and to so conduct the same that the rights of all litigants may properly be safeguarded

has always been recognized as inherent in courts, and to strip them of that authority would necessarily render them so impotent and useless as to leave little excuse for their existence and place in the hands of the legislative branch of the state, power and control never contemplated by the Constitution.

*Atchison, Topeka and Santa Fe Ry. Co. v. Long*, 122 Okl. 86, 251 P. 486, 489 (1926); accord, *Resolute Ins. Co. v. 7th Judicial District Court of Oklahoma*, 336 F.Supp. 497, 503 (D.Okla.1971), aff'd, 404 U.S. 997, 92 S.Ct. 558, 30 L.Ed.2d 550 (1971); *Lindauer v. Allen*, 85 Nev. 430, 456 P.2d 851, 854 (1969); *Sands v. Albert Pike Motor Hotel*, 245 Ark. 755, 434 S.W.2d 288, 291–292 (1968); *Waite v. Burgess*, 69 Nev. 230, 245 P.2d 994, 996 (1952); *Kostas v. Johnson*, 224 Ind. 540, 69 N.E.2d 592, 596 (1946); *Riglander v. Star Const. Co.*, 98 App.Div. 101, 90 N.Y.S. 772, 774–775, aff'd, 181 N.Y. 531, 73 N.E. 1131 (1905). For the same reasons legislative restrictions on the time within which courts must act in criminal cases as well as in civil cases have been declared unconstitutional, *see, e. g., Schario v. State*, 105 Ohio St. 535, 138 N.E. 63 (1922). The only recourse for a court faced with a legislative command endangering its "minimum functional integrity" is to give no effect to the command.

> Because of the basic functions and inherent powers of the three co-equal Branches of Government, the co-equal independent judiciary must possess rights and powers co-equal with its functions and duties, including the right and power to protect itself against any impairment thereof. . . . [T]he judiciary must exercise its inherent power to preserve the efficient and expeditious administration of justice and protect it from being impaired or destroyed.

*Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193, 197 (1971).

Mr. Justice Clark, sitting by designation on the Second Circuit, applied this doctrine to the Speedy Trial Act, § 3164, and found the constitutionality of the Act questionable. *United States v. Martinez*, 538 F.2d 921, 923 (2d Cir. 1976). Affirming the lower court's refusal to release a defendant in custody awaiting trial for more than 90 days, he said:

> We find at least two grounds on which affirmance is required. The first is a constitutional one which we will not elaborate further than to note that there is a question under the doctrine of separation of powers that the Congress can exercise judicial authority to the extent indulged here.

538 F.2d at 923. In a footnote he added that "[s]ome of the language of the Act is so sweeping that it might well be construed as more than procedural, assuming Congress has the power to enact the latter." 538 F.2d at 923, n. 4.

Certain dicta in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), received prominence during the congressional hearings preceding the passage of the Act. Several Congressmen bootstrapped the following language into a suggestion by the Supreme Court that the Congress should quantify by legislation the right to a speedy trial:

> The first suggestion is that we hold that the Constitution requires a criminal defendant to be offered a trial within a specified time period. The result of such a ruling would have the virtue of clarifying when the right is infringed and of simplifying courts' application of it. . .

> But such a result would require this Court to engage in legislative rulemaking activity, rather than in the adjudicative process to which we should confine our efforts. We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise.

407 U.S. 514, 523, 92 S.Ct. 2182, 2188. *See, e. g.*, statement of Congressman Cohen in

Hearings on S. 754, H.R. 7873, H.R. 658, H.R. 773, and H.R. 4807 Before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 93rd Cong., 2d Sess., at 214, 358 (1974). But a clear reading of this language fails to support such an inference. The Supreme Court's refusal to specify a set number of days within which a defendant must be tried was not an invitation to the Congress to enact speedy trial legislation, but a comment generally on the role of an adjudicating court and specifically on the nature of the right to a speedy trial. As the Court went on to indicate, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." (footnote omitted.) 407 U.S. at 530–531, 92 S.Ct. at 2192.

Moreover, it is significant that when the Court commented that the "[s]tates . . are free to prescribe a reasonable period consistent with constitutional standards," no mention was made that Congress could so act. The language is not addressed to state legislatures but to the "states." The import of this suggestion is that the Supreme Court could not overturn state legislation on speedy trial limits which was consistent with the Sixth Amendment. Obviously, any separation of powers protection of the state judiciary would have to come from the state constitution as interpreted by the state courts. In sum, the *Wingo* language is not in the least inconsistent with the holding that the Federal Speedy Trial Act violates basic constitutional notions of the separation of powers.

The deficiencies of the Speedy Trial Act are more than theoretical. Its practical impact triggers the operation of the doctrine of the separation of powers. The burden which the time limits place on the federal district courts is heavy and the disruption severe. The limits of § 3161 and § 3164 may, in various contexts, be too short, and thus interfere with the quality of justice. A member of the Department of Justice, in criticizing S. 754 (a predecessor bill to the Speedy Trial Act), warned of the strain on the courts' ability to administer justice which the Act's time limits would cause.

Cases rushed to trial cannot be thoroughly investigated and prepared. Thus, unwarranted concessions, inadequate investigation and prosecution of cases, and increased congestion in the courts will cause a loss of public confidence in the effectiveness of the criminal justice system, more so than the present delays, which can more appropriately be eliminated through other avenues of reform.

. . .

The complexity of S. 754 will also create monumental administrative headaches. In multiple defendant cases, such as major narcotic conspiracies, judges may be forced to grant severances which would otherwise not be required. This in turn will lead to more trials and more congestion. In addition, as cases mature, last minute reassignment of cases from judge to judge, prosecutor to prosecutor, and public defender to public defender will be necessitated to prevent dismissal—all of which will result in a lower quality of justice for the defendant and society.

Statement of Joseph T. Sneed, Deputy Attorney General, Department of Justice, Hearing on S. 754 Before the Subcommittee on Constitutional Rights of the Committee on the Judiciary, Senate, 93rd Cong., 1st Sess., 111–115 (1973). Nor was this an idle prediction of things to come. This Court, on two occasions in the last twelve months has granted separate trials in lengthy conspiracy cases to accommodate the Speedy Trial requirements. Further reflection now causes this Court to reject the unwarranted congressional intrusion into the internal functions of the judicial process.

Interference with judicial business caused by the congressionally imposed deadlines for criminal cases also results when the civil docket is unduly disrupted. A federal district judge warned Congress of this possible result.

Now what I fear, Mr. Chairman and members of the subcommittee, is this: That if we have to put all of our atten-

tion on criminal cases, we will not reach our civil docket. I am in danger right now of that. And I point out in my statement—and I think you ought to consider this—that there are very important cases on the civil docket that we have to try—the prisoners' rights petitions, the civil rights cases, the habeas corpus applications, the civil rights cases in which the United States is a party, and the onslaught of cases that we are getting under title 7 in private civil rights cases.

These are civil cases and these have to be heard. You can't say to a man who is in jail, "I am not going to get to your petition, which is a civil case, because I want to try this criminal case here first." And I think that the House should look at that.

In other words, what I am saying to you, Mr. Chairman, is this: Whether we talk about the speedy trial bill or whether we talk about plans under rule 50(b) of the Federal Rules of Criminal Procedure, in courts like the Eastern District of Michigan we already have problems. And if you say to us "Now put these criminal cases front and center to the exclusion of the civil cases," we can do that, but the civil litigants are going to suffer.

*   *   *   *   *   *

But the other civil litigants in civil rights cases are equally necessary to consider. Last week, Mr. Chairman, I tried the case of a man who was terminated from his job at the Ford Motor Co. because of race. He brought a suit under title VII and under section 1981 against the Ford Motor Co. This man was out of a job. He exhausted his grievance procedures and he had no relief and the place for him to come was the United States District Court. Can we say to that man, "You wait until we dispose of our criminal docket?" These are problems that I think have to be considered.

Now, each civil litigant regards his problem as important as does the defendant in a criminal case. There must be some kind of balance given to this.

Testimony of Honorable John Feikens, Judge, United States District Court for the Eastern District of Michigan, Hearings on S. 754, H.R. 7873, H.R. 207, H.R. 658, H.R. 773 and H.R. 4807 Before the Subcommittee on Crime of the Committee on the Judiciary, House of Representatives, 93rd Cong., 2d Sess., 241–243 (1974), see also letter of October 7, 1970 from Honorable W. Wallace Kent, Chief Judge, United States District Court for the Western District of Michigan, to Senator Sam J. Ervin, at 175.

This case evidences the acute strains which the legislation has created within the judicial branch, and which the doctrine of the separation of powers is designed to prohibit. In early September, 1977, to comply with the time limits, this case was transferred to this Court from the Judge to whom it was assigned originally. New Assistant United States Attorneys were compelled to replace the prosecutor originally handling the case. If the Act's guidelines had been followed, an earlier trial date would have caused the disruption of a long civil trial in a case filed in 1975, already once postponed and rescheduled. It would have necessitated the replacement of several defense counsel who would have been unavailable to try this relatively complex narcotics conspiracy case. These circumstances are in no way extraordinary and demonstrate the wisdom of our Constitution in prohibiting one co-equal branch from interfering with the administration of another's duties.

The Court is cognizant of the defendants' right to a speedy trial, just as it is cognizant of all their rights under the Constitution, and it is satisfied that the even-handed scrutiny of the appellate courts will not only preserve those rights but will do it without legislative interference. The dictates of *Barker v. Wingo, supra,* and Rules 48(b) and 50(b) of the Federal Rules of Criminal Procedure adequately protect a defendant's right to a speedy trial, which must by its very being remain a "relative concept." Under these principles there is no valid reason requiring that this indictment should be dismissed or that the defendants should be released.

Finally, defendants Howard and Hartzog contend that under Local Rule 30 of the United States District Court for the District of Maryland, they should be released pending trial or, in the alternative, the indictment should be dismissed. Local Rule 30, § 5(a) specifies that "the trial of a defendant shall commence within 60 days of the arraignment." However, this provision does not carry with it a dismissal sanction. Local Rule 30, § 10(d). Under Local Rule 30, § 10(a), a release of a defendant in custody is mandated only when the Speedy Trial Act, § 3164 is violated. In this case, as indicated, § 3164 of the Speedy Trial Act does not compel this Court to release the defendants, and if a contrary interpretation should cause it to be operative under the facts set forth herein, it is unconstitutional. The motions of Howard and Hartzog pursuant to the Local Rules must therefore fail.

Accordingly, it is this 7th day of November, 1977, by the United States District Court for the District of Maryland, ORDERED:

That the motions of the defendants to dismiss the indictment, or in the alternative, for their release pending trial, be, and the same are, hereby DENIED.