**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gary Russell BULLOCK,**
**Defendant-Appellant.**

No. 76–1772.

United States Court of Appeals,
Fifth Circuit.

May 16, 1977.

F. Irvin Dymond, New Orleans, La., for defendant-appellant.

Douglas M. Gonzales, U. S. Atty., Stephen A. Mayo, Cheney C. Joseph, Jr., Asst. U. S. Attys., Baton Rouge, La., for plaintiff-appellee.

Before MORGAN and HILL, Circuit Judges, and NOEL *, District Judge.

JAMES C. HILL, Circuit Judge:

On July 18, 1975, appellant Gary Bullock and one Gerald Kinchen were indicted for one count, Count I, of conspiring to possess marijuana with intent to distribute it; and one count, Count II, of possession of marijuana with intent to distribute it, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1).

From the jury verdict and judgment entered thereon, finding appellant guilty of both counts as charged, comes this appeal from the District Court for the Middle District of Louisiana.

Appellant challenges his conviction on the following contentions:

(1) The trial court erred in denying appellant's motion to dismiss for unnecessary delay in commencing the trial.

* Senior District Judge of the Southern District of Texas, sitting by designation.

(2) The trial court erred in denying appellant's motion to dismiss for failure of the Government to comply with the court's order for discovery.

(3) The trial court erred in denying appellant's motion to dismiss for failure of the Government to produce Jencks Act material two days prior to the commencement of trial.

(4) The trial court erred when it permitted the Government's expert witness to give an expert opinion as to the nature of the substance allegedly possessed by appellant.

(5) The trial court erred in denying appellant's motion for a judgment of acquittal because the Government failed to present substantial evidence that the substance made the basis of the instant prosecution was marijuana.

(6) The trial court erred in charging the jury that appellant was charged with violating the general conspiracy statute, 18 U.S.C. § 371, when appellant was in fact charged with violating 21 U.S.C. § 846, the narcotics conspiracy statute.

## I. *Unnecessary Delay?*

Appellant's contentions with respect to pre-trial delay invoke but one of the three major guides to prompt trial. In this general area, judicial investigation starts with the Sixth Amendment to the Constitution. Obviously, there has been no Sixth Amendment violation in this case and appellant has not so argued.

The second source of guidance, the Speedy Trial Act, 18 U.S.C. § 3161 et seq., spawns the third, the District Court's own Rule 50(b) Plan for Achieving Prompt Disposition of Criminal Cases. While the Speedy Trial Act and District Court Plans are closely related, they are not, and should not be thought of as, the same. The briefs and oral arguments in this case and others

before our Court disclose a lack of sensitivity of the bar, and perhaps the bench, to the distinct differences. This inclines us towards a brief statement of the distinctions between them.

■ The Speedy Trial Act was enacted on January 3, 1975. It represents a major congressional effort to implement the Sixth Amendment's goal of insuring that those who are accused of crime are brought speedily to trial. It expresses the public's interest in prompt conviction of the guilty and the accused's interest in prompt acquittal when the charge is not supported by the evidence. It is not designed to provide new substantive defenses in criminal cases, though, in its mechanical application, some accused of crime are afforded varying measures of relief when the Act's goals are not attained.

During the early years under the Act, the availability of substantial rights to accuseds are confined to those who are kept in confinement awaiting trial and those who have been declared "high risk offenders." 18 U.S.C. § 3164. As to these, the Act clearly mandates that they shall be brought to trial no later than 90 days "following the beginning of such continuous detention or designation of high risk by the attorney for the Government." 18 U.S.C. § 3164(b).

Furthermore, sanctions for failure to meet these time limitations for "custody" and "high risk" defendants are spelled out in the Act. 18 U.S.C. § 3164(c). Subject to specified qualifications, "custody" defendants must be admitted to bail; "high risk" defendants must have their conditions of release reviewed. 18 U.S.C. § 3164(c). The mandatory, substantial relief, provisions of the Act with respect to these classes of defendants have produced the more noteworthy cases [1] and have thus produced the more reasoned criticism of the Act, itself.[2]

---

1. *United States v. Corley*, 548 F.2d 1043 (D.C. Cir.1976); *United States v. Mejias*, 417 F.Supp. 579 (S.D.N.Y.), aff'd on other grounds, sub nom. *United States v. Martinez*, 538 F.2d 921 (2nd Cir. 1976); *United States v. Tirasso*, 532 F.2d 1298 (9th Cir. 1976); *Moore v. United*

*States*, 525 F.2d 328 (9th Cir. 1975); *United States v. Masko*, 415 F.Supp. 1317 (W.D.Wis. 1976).

2. Compare *Tirasso, supra*, with *Martinez, supra*.

Here, however, we are not dealing with a defendant who was classified as "high risk" or who was in custody pending trial. He was admitted to pre-trial release on bail.

The operation of the Act in such cases is vastly different. Until July 1, 1979, the Act states what is to be achieved, 18 U.S.C. § 3161(f) and (g), but furnishes no defendant with any new defense should our courts fall short of the goal. Insofar as the Act is concerned, those engaged in the administration of criminal justice (United States Attorneys, defense counsel, judges, court administrators, clerks of court and others) are given what may be likened unto "job assignments" in industry. Our "production quotas" are set out and we are told to achieve them, but the Act, itself, provides no sanctions should we fall short. See 18 U.S.C. § 3161(f) and (g), 18 U.S.C. § 3163(c).

That is not to say, however, that there shall be no sanctions during these "transitional years." The Act demands self-discipline. Each district is required to convene a planning group for the formulation of a Plan for Achieving Prompt Disposition of Criminal Cases, and such a Plan under Rule 50(b), F.R.Cr.P., shall be adopted under which the speedy trial goals for each transitional year may be achieved. See 18 U.S.C. § 3165 et seq.

■ Thus, to determine the impact of the Speedy Trial Act on a case such as the one before us, we must look to the Plan adopted by the district court for the particular district from which the appeal is taken. It is a binding rule of court, spawned by but not the same as, the Act.

A comparison of the Speedy Trial Act with the Plan under consideration yields significant and highly apparent differences. For the "transitional year" involved in this case, the Act directs that the trial of a defendant like appellant, who is not in custody, commence within 180 days from arraignment. The Plan, adopted by the United States District Court for the Middle District of Louisiana, on the other hand, mandates a trial within 90 days from the entering of a plea of not guilty. Rule 2(b)(c). This is a goal which may be commendable

or which may be overly burdensome. (It may even be both.) However it be evaluated, it is what the Court imposes upon itself and not, in this instance, what the Congress imposed upon the Third Branch.

■ In the instant case, the Plan for the United States District Court for the Middle District of Louisiana for Achieving Prompt Disposition of Criminal Cases became effective on September 29, 1975, for those defendants, like appellant, whose cases were then pending on the docket of the Court. In appellant's case, then, the 90 day period began to run on September 29, 1975 even though he had entered pleas of not guilty at an earlier date.

Although it is contemplated that in the ordinary case, the 90 day limit from arraignment to trial shall be observed, it is recognized that in certain cases these time limits may fall too harshly on one of the parties. Accordingly, the Plan, like the Speedy Trial Act, an underlying source of law for the Plan, provides for extension of the time limitations.

Rule 3 of the Plan for the Middle District of Louisiana provides in pertinent part as follows:

> Any period of time prescribed by these rules may be extended by the Court, . . . Among other reasons, the Court may take into consideration:
>
> (a) A reasonable period of delay resulting from other proceedings concerning the defendant, including, but not limited to, . . . extraordinary pre-trial motions . . . and the period during which such matters are under consideration.

An examination of this provision reveals that the Court is granted a broad discretion in determining what may be conveniently termed, excludable delay.

In the instant case, both parties have agreed that but for a certain 16 day period of time, the 90 day time limitation would have been met.

■ Appellant contends that the Government's filing of an uncontested motion to

sever a defendant named Richard Rogers from the trial of appellant and his co-defendant Kinchen, which consumed a period of 16 days between the submission and the granting of the motion, could not be considered excludable delay under the Plan. We do not agree.

On July 18, 1975, appellant and co-defendant Kinchen were indicted. On October 10, 1975, a superceding indictment was returned, adding Rogers as a defendant in Counts I and II of the original indictment and adding a Count III pertaining to Rogers alone.

Defendants Bullock and Kinchen then filed a motion to sever Count III from the indictment. This motion was granted on November 3, 1975.

The Government not wishing to try defendant Rogers in two separate trials, on November 19, 1975, filed a motion to sever the trial of defendant Rogers from the trial of defendant Kinchen and appellant. Sixteen days later, on December 4, 1975, the motion was granted.

On January 12, 1976, appellant filed a motion to dismiss the indictment for unnecessary delay in bringing the case to trial. The Magistrate held a hearing on the motion and recommended denial, which recommendation, the District Court adopted.

On appeal, appellant renews his contention that the 16 day period could not be considered excludable delay and that dismissal of the indictment is required by the Act and the Plan.

At the outset, we wish to emphasize again that the goal of the Act was fully met since appellant was tried within the 180 day period directed by the Act. But, even if the Act were fully operative (as it will be in July, 1979) and a violation had been shown, dismissal of the indictment with prejudice would not automatically follow. 18 U.S.C. § 3162 would allow the accused to be reindicted if, after considering the seriousness of the offense, the facts and circumstances of the case which led to the dismissal, and the impact of a reprosecution on the administration of the Act and the administration of justice, the trial judge in his discretion so determined.

■ Our inspection of the District's Plan persuades us that, though it burdens the Court, counsel and others involved in the administration of justice, it does not, as a corollary, reward defendants with automatic dismissals in all cases of underachievement. The Plan, itself, contemplates that the 90 day goal will not always be met and that, nevertheless, cases will remain for trial.

Rule 11(c) of the Plan states that:

[W]henever a period of four months has elapsed following arraignment, or following remand for a new trial, and such case has not been set for trial by the Court, the United States Attorney will advise the Judge of this fact, and will state that the government is ready for trial, or will be ready within a stated period of time, and will request a setting.

This provision contemplates that at least some trials will commence over 120 days following a plea of not guilty.

If the court through its own self discipline does not commence trial within the 90 day period, then it becomes the responsibility of the United States Attorney, after the expiration of a 120 day period, to bring the matter to the Court's attention so that trial may be commenced within the period, 180 days in this case, required by the Act.

Yet we need not focus our attention any further upon remedies provided for violations of the Plan or the Act for the simple reason that the District Court was correct in concluding that the pre-trial motion which consumed pre-trial time was delay which was excludable for the purpose of computing the allowable 90 day period.

While the Plan provides that delay due to the filing of extraordinary pre-trial motions constitutes excludable delay, the Plan is silent as to whether or not delay caused by the filings of a motion of a more ordinary nature may be excluded. Neither party has contended that the motion to sever in this case was of an extraordinary nature.

■ The failure of the Plan expressly to exclude delay caused by "ordinary" pre-trial motions does not indicate that such motions may not extend the time limits of the Plan. Rather, the language of Rule 3 expressly states to the contrary.

Any period of time prescribed by these rules may be extended by the Court, . . . *Among other reasons,* the Court may take into consideration:

(a) A reasonable period of delay resulting from other proceedings concerning the defendant, *including, but not limited to,* . . . extraordinary pre-trial motions . . . and the period during which such matters are under consideration. (emphasis added).

The District Court, in its discretion, is free to excuse delay caused by other, non-specified acts.

The Speedy Trial Act, itself, expressly provides for the exclusion of delay attributed to the filing of "pre-trial motions," whether extraordinary or not. 18 U.S.C. § 3161(h)(1)(E). The Act as previously discussed is an underlying source of law of the Middle District Plan. Accordingly, the District Court determined that the delay caused by the filing of the pre-trial motion to sever was excludable from the 90 day time limitation. We agree. Since the Plan was implemented progressively to achieve the requirements of the Act when it becomes effective, it appears most sensible to look to the underlying law in order to determine what non-specified acts constitute excludable delay. Accordingly, we hold that the District Court correctly determined that the 16 day period of delay in this case was properly excludable in computing the allowable 90 day period.

The evidence before this Court convinces us that the motion filed by the Government was not filed with the intention of causing delay. There has been no abuse of the right to file motions. We leave to another day what consequences would ensue if such abuse was found to exist.[3]

## II. *Compliance with Discovery Orders.*

■ On October 17, 1975, the United States Magistrate entered an order which provided in part as follows:

It is ordered that at the request of the defendant, Richard W. Rogers, and with the consent of the Government, the Government shall produce within ten (10) days for *all defendants* to inspect and copy all records; laboratory reports conducted herein; and the auto thefts report filed by the defendant Rogers. (emphasis supplied).

On January 9, 1976, appellant filed a motion to dismiss for the alleged failure of the Government to comply with the order of October 17, 1975. A hearing was held on January 13, 1976, and relief denied.

The Court found that at no time prior to January 9, 1976, did the appellant or his

---

**3.** *See* 18 U.S.C. § 3162(b) which states as follows:

(b) In any case in which counsel for the defendant or the attorney for the Government (1) knowingly allows the case to be set for trial without disclosing the fact that a necessary witness would be unavailable for trial; (2) files a motion solely for the purpose of delay which he knows is totally frivolous and without merit; (3) makes a statement for the purpose of obtaining a continuance which he knows to be false and which is material to the granting of a continuance; or (4) otherwise willfully fails to proceed to trial without justification consistent with section 3161 of this chapter, the court may punish any such counsel or attorney, as follows: (A) in the case of an appointed defense counsel, by reducing the amount of compensation that otherwise would have been paid to such counsel pursuant to section 3006A of this title in an amount not to exceed 25 per centum thereof; (B) in the case of a counsel retained in connection with the defense of a defendant, by imposing on such counsel a fine of not to exceed 25 per centum of the compensation to which he is entitled in connection with his defense of such defendant; (C) by imposing on any attorney for the Government a fine of not to exceed $250. (D) by denying any such counsel or attorney for the Government the right to practice before the court considering such case for a period of not to exceed ninety days; or (E) by filing a report with an appropriate disciplinary committee. The authority to punish provided for by this subsection shall be in addition to any other authority or power available to such court.

counsel call or visit the United States Attorney's office to inspect or copy the exhibits. The Court found that "there are only a few exhibits to be produced, and the exhibits are such that they can easily be reviewed prior to trial." The Court concluded that since all the exhibits had been or would be provided to defendants on the date of the hearing and no prejudice to the defendants had been shown, the case should not be dismissed.

We find nothing to compel the conclusion that the Government failed to abide the order. Armed with it, counsel for the appellant could have inspected and copied the records mentioned in it. The Government shows, without dispute, that it was in a position to, and was obediently ready to, assemble all such documents for such inspection, and copying. No one asked Government counsel to do so. No one came to inspect; no one came to copy. This is no criticism of appellant's counsel. The order, to appellant's benefit had, after all, been obtained on behalf of another defendant, Rogers. Appellant's counsel no doubt realized that "there are only a few exhibits . . . such that they can easily be reviewed prior to trial." Otherwise, it would appear that they just tucked the order away in the file; studiously avoided asking for its fruits; and prepared a motion to dismiss.

While it is doubtful, therefore, that the order of October 17, 1975 was violated, it has long been settled that the appropriate relief for the violation of discovery rules lies within the sound discretion of the District Court. *Gevinson v. United States,* 358 F.2d 761, 766 (5th Cir. 1966); *United States v. Saitta,* 443 F.2d 830 (5th Cir. 1971), *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971). Likewise, "an error in administering the discovery rules is not reversible absent a showing that the error was prejudicial to the substantial rights of the defendant." *United States v. Saitta, supra* at 831.

Appellant has shown neither prejudice to his defense nor an abuse of discretion in the denial of his motion to dismiss. The motion was properly denied.

### III. *Disclosure of Jencks Act Materials.*

 In a contention closely related to his immediately preceding one, appellant argues that the trial court erred in failing to dismiss the indictment for the failure of the Government to comply with the Court's order requiring the Government to deliver Jencks Act, 18 U.S.C. § 3500, materials to the defense two days prior to trial.

Although the appellant admits that the Jencks Act does not require disclosure of a witness' statement until the witness has testified, he contends that the trial judge abused his discretion by refusing to impose any sanctions against the Government attorneys for their noncompliance with the Court's order.

At the close of the Government's case, defense counsel was asked whether the disclosure of the Jencks Act material was satisfactory to the defendant. No objection was raised at that time. Though we are doubtful whether appellant may raise this issue for the first time on appeal, giving the appellant the benefit of such doubt, we find no abuse of discretion in the refusal of the trial judge to impose sanctions and hold that the motion was properly denied. This is not to say that, upon review, we would find fault in a trial judge who dealt sternly with an attorney who had failed to comply with the Court's order even though the order provided for earlier disclosure than the Jencks Act mandates. The Court clearly had discretion here, and it was not abused.

### IV. *The Expert's Qualifications.*

 In appellant's fourth enumeration of error, it is contended that the trial court erred in permitting the Government's witness to give an expert opinion as to the nature of the substance introduced into evidence. The transcript of the trial reveals the following dialogue taking place immediately following the calling of the witness and the announcement by the Government

of its intention to qualify the witness as an expert:

THE COURT: Is there a dispute as to the identity of the substance?

Then it seems to me that it should be admitted that the substance involved is whatever it is. If there is no dispute about it, there is no need to take up the Jury's time going through all the laborious details of identifying the substance if there is no dispute about the substance.

MR. KIEFER (defense counsel): Your Honor, the only thing, we don't know what it is supposed to be. I can't stipulate that this is marihuana because we have never run any tests on it—

THE COURT: Well, is there any dispute about the findings—will there be any evidence to dispute the findings—

MR. KIEFER: No sir, no evidence to dispute the findings.

THE COURT: All right. Simply ask him what it is, and that is about all you need to do, if he has proved it and there is no dispute about it.

BY MR. COCHRAN (the prosecutor): Mr. Ethridge, in June, 1975—

THE COURT: Is this the stuff right here in these boxes that were seized?

MR. COCHRAN: Yes, Your Honor.

THE COURT: Have you seen what is in these boxes?

THE WITNESS: Yes.

THE COURT: And have you examined it?

THE WITNESS: Yes.

THE COURT: Have you analyzed it?

THE WITNESS: Yes, sir.

THE COURT: What is it?

THE WITNESS: It's marihuana.

On cross-examination of the Government's expert witness, counsel for the appellant elicited the following credentials establishing the expertise of the witness:

(1) that the witness had a Bachelor of Science degree in biology;

(2) that as of the time he analyzed the substance, the witness had been a criminalist for a year and a half and a laboratory criminalist for ten months;

(3) that the witness had examined approximately 3500 individual items that were suspected marijuana.

While we agree with appellant that the government's witness had not been qualified when he gave his opinion as to the nature of the substance, it is clear to us that, after cross-examination of the witness, his expert qualifications had been established. Furthermore, the failure of defense counsel to object at trial and our opinion that if error occurred it was not plain error, leads us to the conclusion that this challenge to appellant's conviction lacks merit.

## V. *Judgment of Acquittal.*

■ Appellant's related contention that his motion for a judgment of acquittal should have been granted lacks merit. There was ample proof that the evidence admitted was in fact marijuana. Likewise, the failure of the appellant to reurge his motion at the conclusion of all the evidence operates to narrow our standard of review. *See* Rule 29, F.R.Cr.P. Only if the record revealed a manifest miscarriage of justice because the evidence on a key element of the offense was so tenuous that a conviction would be shocking would reversal on the sufficiency of the evidence be required. *United States v. Landers,* 484 F.2d 93 (5th Cir. 1973). No such circumstances appear in this case.

## VI. *The Jury Charge.*

■ Appellant in his final contention argues that the trial judge committed reversible error in charging the jury that appellant was accused of violating 18 U.S.C. § 371 [4], the general conspiracy statute, rath-

---

4. 18 U.S.C. § 371 states as follows:

 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or

any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years or both.

er than 21 U.S.C. § 846[5], the narcotics conspiracy statute.

The record reveals that the trial judge in his charge to the jury, instead of basing his charge on 21 U.S.C. § 846, in fact charged a portion of 18 U.S.C. § 371:

> "If two or more persons conspire either to commit an offense against the United States, or to defraud the United States, or any agency thereof in any manner, or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy," each shall be guilty of an offense against the United States.

The trial judge then charged the jury that the "offense against the United States" with which the defendant was charged was the possession of marijuana with the intent to distribute it.

As the record indicates, defense counsel was aware that the portion of the general conspiracy statute had been charged and made no objection thereto. No prejudice flowing from the jury instruction has been shown. We are convinced that the charge given did not amount to plain error.

Therefore, the judgment of the District Court is

AFFIRMED.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor. June 25, 1948, c. 645, 62 Stat. 701.

**5.** 21 U.S.C. § 846 states as follows:

Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy. Pub.L. 91–513, Title II, § 406 Oct. 27, 1970, 84 Stat. 1265.