UNITED STATES of America,
Plaintiff-Appellee,

v.

Patricia Ann SULLIVAN, and Carl Roger
Spadero, Defendants-Appellants.

No. 77–5546
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 10, 1978.

As Corrected on Denial of Rehearing
Oct. 27, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

**122**

Kerry J. Nahoom, Fort Lauderdale, Fla. (Court-appointed), for Sullivan.

Brooks Taylor, Crestview, Fla. (Court-appointed), for Spadero.

Linda Collins Hertz, Asst. U. S. Atty., J. V. Eskenazi, U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges:

PER CURIAM:

Patricia Ann Sullivan and Carl Roger Spadero appeal their convictions under a three-count indictment for (1) conspiracy to import cocaine and to possess with intent to distribute cocaine, (2) the importation of cocaine, and (3) the possession with intent to distribute cocaine. 21 U.S.C.A. §§ 841(a)(1), 952(a), 960(a)(1), 963 and 18 U.S.C.A. § 2. After consideration of their arguments, we affirm.

### The Facts

In the spring of 1976, Maureen Anne Frazer, an unindicted coconspirator, met with Spadero and agreed to travel with him to Colombia in South America to help smuggle cocaine. Frazer was told that Patricia Sullivan, who was living with Spadero at the time, could not make the trip because she had been to Colombia too recently. Spadero, however, who had also been to Colombia before, was going to use a passport under the name of D. J. Sullivan, Patricia's deceased brother. Before they left, Sullivan explained to Frazer how to dress to smuggle the cocaine past the Customs inspectors.

Frazer and Spadero first went to Pensacola, Florida, where they met another unindicted conconspirator, Margaret Cheryl Deceder. The three then proceeded to Miami and eventually to Bogata, Colombia. Spadero arranged to buy the cocaine, and Frazer picked up the substance and paid for it. The cocaine was then packaged so the women could carry it in their vaginas. Spadero took some remaining cocaine and stated that he would bring it into the country himself, even if he had to carry it inside his body. The three re-entered the United States through Miami International Airport. Spadero and Frazer cleared Customs without detection, but Deceder was arrested for carrying 298 grams of cocaine.

Spadero and Frazer returned to Pensacola where they sold some of the cocaine to make bail for Deceder. Deceder later fled the jurisdiction and resided with Sullivan in Albany, New York. Frazer, meanwhile, left Spadero in Pensacola and also went to Albany where she was met at the airport by Sullivan. Frazer was supposed to give her a package of cocaine, but Frazer decided to keep the narcotics herself and told Sullivan that she lost the package. Sullivan was upset and constantly asked Frazer for the cocaine. Sullivan even tried to call Spadero in Pensacola as she was driving Frazer to her house.

In July 1976, Frazer, after a change of heart, called the Drug Enforcement Administration in Boston and reported the cocaine smuggling. Sullivan, Spadero, and Deceder were ultimately arrested. Sullivan and Spadero were tried in Florida where a jury convicted them on all three counts of the indictment.

### Sullivan's Contentions

Sullivan admits that a conspiracy existed and two substantive crimes were committed, but she contends that there is insufficient evidence to connect her with the offenses. We believe, however, that more than sufficient evidence exists to

demonstrate Sullivan's "knowing participation" in the conspiracy. *United States v. Littrell*, 5 Cir., 1978, 574 F.2d 828, 832. First, she helped obtain the passport in the name of her deceased brother that Spadero used to travel to Colombia. Second, Sullivan advised Frazer on how to dress to get the cocaine through Customs. Third, she expected Frazer to bring her a package of cocaine and was quite upset when it was not produced. Finally, Sullivan admitted when she was arrested that she knew Deceder was a fugitive on a federal drug charge. And since Sullivan was part of the conspiracy, she is deemed guilty of the substantive acts committed in furtherance of the conspiracy by any of her criminal partners. *United States v. Netterville*, 5 Cir., 1977, 553 F.2d 903, 912, *cert. denied*, 1978, 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752.

■ Sullivan also argues that the trial court erred in denying her motion for severance because she was prejudiced by the cumulation of evidence against her coconspirators and she was unable to call Spadero as her witness. The general rule, however, especially in conspiracy cases, is that persons jointly indicted should be tried together. *United States v. Kelly*, 5 Cir., 1978, 569 F.2d 928, 938. A jury might cumulate the evidence on all counts against all defendants, but "[t]he remedy of severance is justified only if the prejudice flowing from a joint trial is clearly beyond the curative powers of a cautionary instruction." *United States v. Morrow*, 5 Cir., 1976, 537 F.2d 120, 136, *cert. denied*, 1977, *Martin v. U. S.*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806. In this case, although Sullivan complains that no limiting instructions were given, she does not point to a single refusal by the trial judge to give such an instruction. Indeed, without a request by either party, the Judge gave limiting instructions during trial on the use of hearsay testimony against one defendant. Further limiting instructions were given at the close of trial. What prejudicial effects, if any, were cured by these instructions.

■ Sullivan's general motion for severance, moreover, merely stated that she "may be deprived" of her right to call

Spadero as a witness. This was clearly insufficient under the guidelines of this Court on when severance should be allowed to have a codefendant testify. *United States v. Rice*, 5 Cir., 1977, 550 F.2d 1364, 1369–70, *cert. denied*, 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312.

### Evidence Of Other Crimes

■ Both appellants argue that it was error for the trial court to allow testimony on a statement made by Sullivan at the time of her arrest, which was six months after the termination of the conspiracy as alleged in the indictment. Sullivan admitted when she was arrested that she lived with Deceder, whom she knew was a fugitive on federal drug charges. Spadero and Sullivan contend this is prejudicial evidence of other crimes and that it is irrelevant since the conspiracy had already terminated.

In *United States v. Killian*, 5 Cir., 1975, 524 F.2d 1268, we had a similar situation concerning post-arrest statements by a coconspirator that demonstrated his knowledge and participation in the already terminated conspiracy. We held that such statements against interest bore directly on the question of knowledge of and membership in the conspiracy. As in *Killian*, Sullivan's admissions against interest are, as the trial court stated, "[v]ery relevant on the issue of the conspiracy charge when one of the conspirators has flown the coop and lit in her roost." R. at 282. The fact that the statement also revealed the crime of harboring a fugitive has not been shown to outweigh its probative value on whether Sullivan had knowledge of the conspiracy. *United States v. Evans*, 5 Cir., 1978, 572 F.2d 455, 484; *United States v. Catano*, 5 Cir., 1977, 553 F.2d 497, 500.

To protect Spadero's rights, furthermore, the trial court instructed the jury prior to the mention of Sullivan's statement that it could not be considered against Spadero. Sullivan, although she complains about the lack of limiting instructions, never requested any instructions for herself. It is difficult to believe, moreover, that the admission of "other crimes" evidence through Sullivan's statement could be considered

prejudicial. Deceder testified during trial that she lived with both appellants when she was a fugitive. Neither Spadero nor Sullivan objected to this testimony.

### Spadero's Contentions

Spadero argues that the indictment should be dismissed because it is based on the "perjured" testimony of Maureen Frazer, the Government's key witness. Frazer testified during trial that she did not reveal to the grand jury her own role in the cocaine smuggling scheme.

■ The trial court, however, found no evidence that the witness committed perjury before the grand jury or that there was any indication of Government misconduct. The only possible effect on the grand jury that knowledge of Frazer's part in the conspiracy could have had would be to cast doubt on her credibility. But we refuse to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that later may prove to be questionable. "Such a rule of law would necessitate independent judicial review of the credibility of grand jury witnesses, an exercise that would seriously infringe upon the traditional independence of the grand jury." *United States v. Guillette*, 2 Cir., 1976, 547 F.2d 743, 753, *cert. denied*, 1977, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102. Moreover, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 1974, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561, 569. Thus, we affirm the denial of the motion to dismiss. *See also Costillo v. United States*, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (indictment based exclusively on hearsay is not constitutionally invalid).

■ Finally, Spadero contends that the trial court erred in denying his motion for inspection of the cocaine by his own expert witness. F.R.Crim.P. 16(a) requires that "[u]pon request of a defendant the government shall permit the defendant to inspect . . . tangible objects . . . ." This includes the right to have an expert examine the narcotics before trial. E. g., *United States v. Acarino*, S.D.N.Y., 1967, 270 F.Supp. 526.

Apparently, however, defendant's counsel was somewhat confused on how to force compliance with this rule. On March 15, 1977, the trial court issued a standing discovery order specifically tracking the language of Rule 16(a) and stating that the defendant had the right to inspect "tangible objects." But instead of going directly to the U. S. Attorney's office to examine the narcotics, the defendant filed a motion two days later asking the court for the right to have his own expert inspect the cocaine. The record indicates that the Court denied the motion orally, R. at 370, and in a written denial *nunc pro tunc* on August 31, 1977, it explained that the defendant's request had been included in its standing discovery order.

The defendant never shows that the Government violated the standing discovery order or that he even asked the Government for permission to inspect. During trial when the Government introduced the cocaine through its expert, the defendant's counsel stipulated to the expert's qualifications but objected to the introduction because the Court had denied the motion to inspect.

We find no abuse of discretion in the trial court's denial of Spadero's motion to inspect. *United States v. Bullock*, 5 Cir., 1977, 551 F.2d 1377, 1384; *United States v. Saitta*, 5 Cir., 1971, 443 F.2d 830, *cert. denied*, 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250. Whatever error there was, the burden of blame is on the defendant's counsel. *See United States v. Bullock, supra*.

AFFIRMED.

### ON PETITION FOR REHEARING

PER CURIAM:

Upon consideration of defendant Spadero's petition for rehearing, the Court deletes the last two sentences of its opinion, 578 F.2d 121 at 124, which read as follows: "Whatever error there was, the burden of blame is on the defendant's counsel. *See United States v. Bullock, supra* [551 F.2d 1377, 5th Cir.]." In all other respects, the petition for rehearing is DENIED.