# United States Court of Appeals
# for the Fifth Circuit

---

No. 24-60252

---

United States Court of Appeals
Fifth Circuit

**FILED**

March 6, 2025

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Henry Weaver,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:22-CR-42-1

---

Before Higginbotham, Willett, and Ho, *Circuit Judges*.[*]

Per Curiam:[**]

Henry Weaver was convicted of forcibly assaulting, intimidating, and interfering with a United States Postal Service mail carrier's performance of his official duties with a deadly and dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b). Weaver challenges his indictment and conviction. Finding no error of the district court, we AFFIRM.

---

[*] Judge Ho concurs in the judgment only.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60252

## I.

On April 23, 2022, Benjamin Jones, a United States Postal Service mail carrier, was delivering mail in Marks, Mississippi when he was confronted by Henry Weaver (also known as "Nate Dogg"), about a missing package. Jones was nearing the end of his usual mail route on Sims Street when Weaver pulled up in a gray Toyota that stopped in the middle of the road, preventing Jones' mail truck from leaving. There were two other masked individuals in the car. Weaver then stepped out and asked Jones about a missing package, stating that he knew where Jones and his postmaster, Sean Shegog, lived, and that he wanted his package or $10,000 within 24 hours. Weaver returned to the Toyota, and when Jones attempted to drive around the car, Weaver stopped Jones again. Weaver and the other individuals in the car pointed firearms at Jones from the car while Weaver threatened: "This is what we shooting." Jones then drove off the road to avoid those threatening him.

Soon after the incident, Jones called Shegog to report what happened.[1] Shegog told Jones to return to the post office for his safety, and then called 911. Jones delivered mail to a couple of addresses on a side street near the incident before returning to the post office to meet with deputies from the Quitman County Sheriff's Office ("QCSO").[2] That same day, the QCSO generated a report. The Marks Police Department and the United States Postal Inspection Service ("USPIS") also investigated the incident.

---

[1] Jones testified at trial that he called Shegog "[a]nywhere from three to five minutes" after Weaver's threat to him.

[2] Though Weaver asserts that Jones "went on and finished his route" before returning to the post office, a review of the record proves the contrary. Jones, for example, testified that he did not deliver mail to a nearby housing development, which would have been the end of his route.

No. 24-60252

## II.

Weaver was indicted by a grand jury on April 28, 2022, for forcibly assaulting, intimidating, and interfering with a USPS mail carrier engaged in the performance of his official duties with a deadly and dangerous weapon. In February 2024, Weaver was convicted of these charges by a jury. Weaver moved for acquittal. The district court denied his motion and subsequently sentenced him to 240 months of imprisonment. He timely appealed. On appeal, Weaver raises six issues. We consider each in turn.

## III.

Prior to trial, Weaver moved to dismiss the indictment, asserting that the grand jury testimony presented by the Government was non-credible and contradictory. The district court denied his motion. We agree.

### A.

"The denial of a motion to dismiss the indictment for Governmental misconduct is reviewed *de novo*." *United States v. Cessa*, 861 F.3d 121, 141 (5th Cir. 2017) (cleaned up). This Court, however, reviews "any district court factual determinations concerning prosecutorial misconduct before the grand jury for clear error." *Id.* (citing *United States v. Bourgeois*, 950 F.2d 980, 984 (5th Cir. 1992)).

"As a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant." *Id.* (cleaned up). "Dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations." *Id.* (cleaned up).

### B.

Weaver alleges two types of prosecutorial misconduct before the

3

No. 24-60252

grand jury. First, he argues that the Government presented false evidence to the grand jury through the testimony of Charlie Tutor, a USPIS inspector, who investigated the incident. Specifically, Weaver asserts that Inspector Tutor made contradictory statements, including:

- the number of people who exited the Toyota;
- the name Jones used to identify Weaver;
- whether Jones identified other passengers;
- who called the police; and whether Jones finished his route;[3]
- the number of hours Weaver gave Jones to produce the package;
- and the reasons for Jones' new mail delivery route.

None of these discrepancies are sufficient to warrant the extraordinary relief that Weaver now requests. This Court "refuses to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that may later prove to be questionable." *Cessa*, 861 F.3d at 142 (citing *United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978)) (alteration in original). Under this standard, Weaver's allegations fail. Furthermore, the discrepancies identified were immaterial and did not "substantially influence[] the grand jury's decision to indict[.]" *Id.* Weaver's identified discrepancies do not impugn this narrative of events.

Second, Weaver argues that the Government "injected prejudicial and irrelevant information into the grand jury proceeding" when Inspector Tutor was asked to speculate that the incident arose over a mailed package containing drugs, and when Inspector Tutor testified to Weaver's character and propensity for committing crimes similar to the incident.

---

[3] As noted above, *supra* n.2, Jones did *not* finish his route before returning to the post office.

4

No. 24-60252

The testimony at issue did not require dismissal of the indictment. When the Government asked Inspector Tutor why Weaver might have assaulted Jones over a missing package, it made clear to the grand jury that its line of questioning was speculation and not based on a set of known facts.[4] The Government was also careful when it addressed Weaver's criminal history with the grand jury: without presenting evidence of Weaver's prior bad acts or convictions, it attempted to prove Weaver's motive to explain what might have occurred.[5]

The grand jury was aware of the underlying facts and the prosecution acknowledged that this was a "'he-said-she-said' type of case"; yet it still chose to indict Weaver. On these facts, we are not left with "grave doubt that the decision to indict was free from the substantial influence of such violations." *Cessa*, 861 F.3d at 141 (cleaned up).

**IV.**

Weaver next argues that the district court improperly admitted

---

[4] For example, in the exchange with Inspector Tutor, the Government explicitly stated it was asking him to speculate:

"Q: Now, I'm going to ask you for a little *speculation*. And we're going to tell the grand jury right now the next part really is *speculation*. You've testified to the facts, correct?

A: Yes, sir. Q: Just *speculate*. Based on your experience as a postal inspector, what do you think is going on here?"

(emphasis added).

[5] For example, the Government asked:

"Q: Let me ask you this question . . . You've talk[ed] to some of the local law enforcement, whether in Quitman County or Panola County, regarding this, correct?

A: Yes. Q: And I'm not trying to dirty up Henry Weaver on other matters. But does this incident fit in with what locals know of Henry Weaver?"

evidence of Weaver's prior drug convictions under FED. R. EVID. 404(b). We disagree.

## A.

We review the admission of evidence of prior convictions under a heightened abuse of discretion standard. *United States v. Miller*, 520 F.3d 504, 511 (5th Cir. 2008) (citing *United States v. Mitchell*, 484 F.3d 762, 774 (5th Cir. 2007)). Even if the district court abused its discretion in admitting the Rule 404(b) evidence, we do not reverse if the error was harmless. *Mitchell*, 484 F.3d at 774.

Rule 404(b) "excludes extrinsic offense evidence when it is relevant solely to the issue of the defendant's character." *United States v. Ridlehuber*, 11 F.3d 516, 521 (5th Cir. 1993). "Even if the extrinsic evidence is probative for 'other purposes' recognized by Rule 404(b), such as showing motive or intent, the probative value of the evidence must be weighed against its prejudicial impact." *Id.*

*United States v. Beechum* creates a two-step inquiry for analyzing the admissibility of Rule 404(b) evidence. 582 F.2d 898, 911 (5th Cir. 1978). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id.* Under this step, the Court considers the following factors: "(1) the [G]overnment's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017) (citations omitted). We "give[] great deference to the district court's informed judgment in weighing the factors." *United States v. Kinchen*, 729 F.3d 466, 473 (5th Cir. 2013) (citations omitted).

No. 24-60252

**B.**

The district court—in admitting a stipulation of facts detailing two of Weaver's prior drug-related convictions—found that the prior convictions were relevant because they showed motive and were not unduly prejudicial under *Beechum*'s two-step inquiry.[6] We agree.

**1.**

Weaver acknowledges that motive is valid grounds for admission of evidence but argues that the admission of his prior convictions fails *Beechum*'s first prong because "there is a major logical and relevancy gap between an allegation of threatening a mail carrier and drug dealing." Specifically, Weaver takes issue with the lack of similarity between the drug convictions and the offense charged.

Weaver is generally correct that the "relevance" of evidence under *Beechum*'s first step "is a function of its similarity to the offense charged." 582 F.2d at 911. But he overlooks the exception for motive. *Beechum* recognized that "[i]n other contexts different standards of [relevance] apply[,]" and that "overall similarity is not required when the offense is introduced to show motive." *Id.* at 911 n.15. Here, extrinsic evidence of Weaver's prior drug convictions is relevant to motive because they help establish why Weaver might commit the offense, as threatening a postal

---

[6] The stipulation of facts introduced by the Government also included a third prior conviction for possession of a firearm. On appeal, however, Weaver does not contest the admissibility of this conviction and focuses his arguments on his prior drug convictions. Weaver has therefore forfeited these claims. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

worker is not a typical response to a delayed package.[7] *See Kinchen*, 729 F.3d at 472. The lack of similarity of the extrinsic acts did not bar their use at trial.

Weaver cites to two cases to support his argument, but both are readily distinguishable. First, he cites to *United States v. Sumlin* as an example of an "unsuccessful attempt by the government to tie together unrelated charges[.]" 489 F.3d 683 (5th Cir. 2007). But *Sumlin* is inapposite because this Court found that the evidence was only relevant to the defendant's character—not motive—and was therefore inadmissible. *See Sumlin*, 489 F.3d at 691.

Weaver also cites to *Ridlehuber*, which is similarly inapplicable. 11 F.3d 516. *Ridlehuber* involved a gun prosecution in which the Government offered evidence of methamphetamine manufacturing to establish motive for firearm possession, and this Court took issue with the Government's presentation of evidence, finding that the "evidence . . . presented by the [G]overnment was quite weak." *Id.* at 523. The Court also found that the firearm at issue—a shotgun that had to be cocked with the use of a tool—undercut the Government's theory that the shotgun was used to protect the drug lab, as such a weapon was "hardly the weapon of choice in a gunfight." *Id.*

Here, however, the Government had clear evidence of Weaver's prior drug-related convictions, to which Weaver stipulated. And—unlike in *Ridlehuber*—the extrinsic acts at issue do not undercut the Government's motive theory.

## 2.

The district court similarly did not abuse its discretion in finding that

---

[7] The Government's theory was that it "is not unreasonable to think that a drug dealer might threaten his mail carrier when a valuable shipment of drugs is missing."

No. 24-60252

Weaver's prior drug convictions should be admitted under *Beechum*'s second step. Specifically, the district court found that: the Government's need for the evidence was "rather high" because there was little evidence available and because evidence of motive was important to help explain the incident;[8] the similarity (or lack thereof) of the extrinsic and charged offenses did not weigh heavily either way; the balance between temporal remoteness and probative value was satisfied by admitting Weaver's more recent prior drug convictions and excluding the rest; and limiting instructions would be provided to mitigate prejudice.

Weaver raises two challenges at this juncture. Neither are persuasive. First, Weaver again argues that because the "extrinsic offenses are clearly dissimilar" to the charged offense, "the probative value . . . is extremely low." This argument fails for the same reason it fails above: "when the extrinsic evidence is introduced to show motive[,]" "[t]he extrinsic act evidence need not be similar to the charged offense[.]" *Kinchen*, 729 F.3d at 472 (citing *Beechum*, 582 F.2d at 911 n.15).

Second, Weaver argues that the extrinsic acts are too remote in time to be admissible. Though "[p]robative value is augmented by a lack of temporal remoteness between the offenses[,]" *Juarez*, 866 F.3d at 628 (cleaned up), "the amount of time that has passed since the previous conviction is not determinative[,]" *United States v. Arnold*, 467 F.3d 880, 885

---

[8] Weaver also cites to the case *United States v. Jackson*, 339 F.3d 349 (5th Cir. 2003) for support, asserting that the Court's finding that extrinsic evidence of prior criminal conduct was inadmissible because it had low probative value but carried substantial risk of undue prejudice. *Jackson* is readily distinguishable from the case at hand, however, based on the Government's need for evidence. The Court in *Jackson* found that the prior conviction "had very little probative value when considering the other evidence going to intent[.]" 339 F.3d at 356. Here, however, the district court correctly noted that the Government's need for evidence was "rather high."

No. 24-60252

(5th Cir. 2006). This Court has upheld the admission of Rule 404(b) evidence "where the time period in between was as long as 15 and 18 years." *Id.* The two drug-related convictions at issue were from 2011 (eleven years before the charged offense) and 2019 (three years before the charged offense). Though the temporal proximity of Weaver's 2011 conviction is more attenuated, the district court did not abuse its discretion in admitting this conviction when considering the Government's high need for evidence.[9]

## C.

Related to the admissibility of Weaver's prior drug-related convictions under Rule 404(b), Weaver raises two additional arguments.

### 1.

First, Weaver argues that the Government improperly "called Weaver a 'drug dealer' in every argument to the jury and several witness examinations[,]" "poison[ing] the jury." This assertion, however, is factually inaccurate. Other than in the stipulation concerning Weaver's prior convictions, the Government referenced drug dealing once during the cross examination of a witness, and once during closing arguments.

Furthermore, without deciding whether the district court erred in allowing such references, we conclude that any error was harmless. The admission of such character references did not have a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Wright*, 634 F.3d 770, 775 (5th Cir. 2011) (cleaned up). Weaver's prior convictions were included in a stipulation, and the Government only referred

---

[9] The district court excluded two additional convictions—one from 2010 and one from 2001—because the temporal proximity of those convictions were even further attenuated from the charged offense, and the Government's need for those convictions "is diminished in light of the two more recent convictions being admitted."

to Weaver as a drug dealer once during closing argument. Given the amount of evidence presented relevant to the elements of the crime at issue, it is not substantially likely that the Government's drug dealing references increased the risk of the jury convicting Weaver for an improper reason.

**2.**

Second, Weaver argues that the district court permitted the Government to improperly introduce lay opinion testimony from Inspector Tutor at trial. He asserts that Inspector Tutor's testimony "was not the kind of lay opinion FED. R. EVID. 701 and *United States v. Haines . . .* permit." *See* 803 F.3d 713 (5th Cir. 2015). Neither argument avails.

Rule 701 defines lay opinion testimony as testimony that is "rationally based on the witness's perception." FED. R. EVID. 701(a). This Court has interpreted Rule 701 to require that "[a] lay opinion must be based on personal perception, must be one that a normal person would form from those perceptions, and must be helpful to the jury." *United States v. Ebron*, 683 F.3d 105, 137 (5th Cir. 2012) (citation omitted). Furthermore, "[t]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Id.* at 136–137 (cleaned up). Under this standard, Inspector Tutor's testimony was properly admitted under Rule 701; his testimony was based on his past experiences formed from firsthand observation as a postal inspector for the United States Postal Service.

Weaver cites *Haines* to argue that Inspector Tutor's testimony was improperly admitted, but this argument fails. 803 F.3d 713. The circumstances of *Haines*—in which this Court determined that drug traffickers' jargon is a specialized body of knowledge fit for expert testimony—is wholly distinguishable from this case at hand. *Id.* at 727–28.

There is a notable a lack of drug traffickers' jargon in the facts here, and Inspector Tutor's testimony is not based on a specialized body of knowledge, but rather his personal knowledge and experience.

Lastly, Weaver argues that Inspector Tutor's testimony was more prejudicial than probative. But—like Weaver's admitted drug convictions—Inspector Tutor's testimony was probative because it helped establish Weaver's motive. *See supra* Section IV(B). Furthermore, the testimony was not highly prejudicial because Inspector Tutor testified to his general experience without getting to the specifics of the case at issue.

## V.

Weaver also argues that the district court improperly excluded evidence of 911 calls following the initial incident for lack of relevance. Though the district court admitted the initial 911 call by Shegog reporting the incident, Weaver asserts that the entire 911 call recording was crucial evidence showing that: (1) Jones did not call 911 himself, and (2) that the QCSO "did not act as if someone had been assaulted." We review for abuse of discretion, subject to harmless error. *See United States v. Yanez Sosa*, 513 F.3d 194, 199–200 (5th Cir. 2008). We see none.

The remainder of the 911 call recording was not relevant under FED. R. EVID. 401 and was properly excluded by the district court. Rule 401 defines relevant evidence as evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." FED. R. EVID. 401(a)–(b).

It is undisputed that Jones did not call 911 himself, and the remainder of the 911 call recording did not prove that the QCSO did not take action. The recording at issue consisted of various calls or radio communications between unknown and unidentified law enforcement officials discussing

whether the city or the county had jurisdiction over the incident. The district court did not abuse its discretion here.

## VI.

On appeal, Weaver argues that the district court abused its discretion when it excluded a hearsay statement—summarizing Jones' statements to law enforcement—included in the QCSO incident report during trial.[10] Weaver asserts that the statement should have been admitted under FED. R. EVID. 801(d)(1), which states that a declarant-witness's prior statement under certain conditions is not hearsay.

Weaver, however, acknowledges that the statement in question is a third party's summary of Jones' statement—not Jones' own statement. That admission ends the inquiry: a statement by someone other than the witness cannot be considered a "prior statement" of the witness. *See* FED. R. EVID. 801(d)(1). The district court did not abuse its discretion. *See Yanez Sosa*, 513 F.3d at 199.

Weaver cites to Eleventh Circuit caselaw to assert that he should have been permitted to present the statement to Jones to determine if Jones would adopt it for impeachment purposes. *See United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993). But his argument fails to persuade us. Even if Jones had adopted the statement at trial, the statement would remain inadmissible. Rule 801(d)(1) imposes specific conditions to prior inconsistent statements; such statements must have been "given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition[.]" FED. R. EVID. 801(d)(1)(A). Jones' statement does not meet these conditions.

_____

[10] The district court admitted other portions of the QCSO's incident report.

## VII.

Weaver challenges the district court's denial of his motion for judgment of acquittal. In his request for acquittal, Weaver focused on Jones' credibility, arguing that "Jones was so non-credible that a reasonable juror should not have placed any weight on his testimony in returning a verdict." On appeal, Weaver repeats his arguments, providing examples of Jones' testimony that he believes were contradictory and insufficient to support a guilty verdict. We find that the district court properly denied Weaver's motion for judgment of acquittal.

## A.

This Court reviews *de novo* the denial of properly-made motions for a judgment of acquittal under FED. R. CRIM. P. 29. *See United States v. Valle*, 538 F.3d 341, 344 (5th Cir. 2008). In reviewing such motions, the Court must determine "whether the relevant evidence, viewed in a light most favorable to the [G]overnment, could be accepted by a jury as adequate and sufficient to support the conclusion of the [D]efendant's guilt beyond a reasonable doubt." *United States v. Shoemaker*, 746 F.3d 614, 619 (5th Cir. 2014) (citation omitted). "In considering the sufficiency of the evidence, we must bear in mind that the jury is free to choose among reasonable constructions of the evidence, even when certain evidence conflicts or suggests innocence." *Id.* (cleaned up).

## B.

The district court denied Weaver's request for acquittal, finding that Jones' testimony sufficiently met the elements of a charge under 18 U.S.C. § 111(a)(1), (b). We agree.

Jones testified at trial and stated that a man he knew as "Nate Dogg"—subsequently identified as Henry Weaver and confirmed in court by

Jones as the Defendant—threatened him at gunpoint while he was delivering mail on April 23, 2022. Weaver's "evidence of Jones' lack of credibility"— that Jones did not call 911, that there was "total lack of action or even investigation on the part of any law enforcement," and that Weaver did not live on Sims Street or receive mail there—was not material to the elements of the crime. Viewed in the light most favorable to the Government, the evidence presented at trial was sufficient to support Weaver's conviction.

## VIII.

Last, Weaver contends that the district court abused its discretion when it granted an *Allen* charge after the jury indicated that it was deadlocked following over three hours of deliberation. *See Allen v. United States*, 164 U.S. 492 (1896). We review the use of an *Allen* charge for abuse of discretion, *United States v. Andaverde-Tinoco*, 741 F.3d 509, 515 (5th Cir. 2013), and find none.

### A.

"In order to uphold an *Allen* charge, (1) the semantic deviation from approved *Allen* charges cannot be so prejudicial as to require reversal and (2) the circumstances surrounding the giving of an approved *Allen* charge must not be coercive." *United States v. Winters*, 105 F.3d 200, 203 (5th Cir. 1997). "We evaluate the 'totality of the circumstances' surrounding the use of the charge in assessing its coercive effect." *Andaverde-Tinoco*, 741 F.3d at 517 (citing *United States v. Lindell*, 881 F.2d 1313, 1321 (5th Cir. 1989)). Weaver does not contest the language of the approved *Allen*-charge, so we focus on whether the circumstances surrounding the use of the charge were coercive.

### B.

Weaver argues that the "lack of circumstances in the record" indicates coercion because he is unable to assess whether the circumstances

surrounding the charge were coercive. Without legal support or citation, he asserts that the charge was given without any context, and that three hours "is not generally accepted as lengthy deliberations in a criminal case."

Weaver's arguments are unconvincing. The case involved a one-count indictment with a few witnesses, and the trial was conducted in one afternoon. After the jury deliberated for over three hours, it notified the district court that it was deadlocked, and the court issued an *Allen* charge to instruct the jury to continue its deliberations. There was nothing coercive about the district court's use of the *Allen* charge here.

Furthermore, this Court has affirmed *Allen* charges with similar lengths of deliberations. For example, in *United States v. Andaverde-Tinoco*, we affirmed a charge where the jury reported itself deadlocked after two hours of deliberations and reached a verdict two-and-a-half hours after receiving an *Allen* charge. 741 F.3d at 515, 518*; see also, e.g., United States v. Scruggs*, 583 F.2d 238, 241 (5th Cir. 1978) (charge given after four-and-a-half hours of deliberation, verdict returned 48 minutes after charge); *United States v. Bailey*, 468 F.2d 652, 664–665 (5th Cir. 1972) (charged given after three-and-a-half hours of deliberation, verdict returned one-and-a-half hours after charge). Weaver cites no authority where an *Allen* charge was deemed coercive under similar circumstances.

## IX.

Finding no error of the district court, we AFFIRM Weaver's conviction.